Exhibit D

**Frank J. Chesky**

| | |
|---|---|
| **From:** | Frank J. Chesky |
| **Sent:** | Thursday, October 04, 2007 9:31 AM |
| **To:** | 'veiga521@gmail.com' |
| **Cc:** | James Cecchi; Lindsey H. Taylor |
| **Subject:** | Mathieson v. DeNiro |
| **Attachments:** | brief re order to show cause.pdf; civil cover sheet.pdf; complaint.pdf; cover letter to clerk re filing complaint.pdf; dec of christopher mathieson.pdf; proposed order to show cause.pdf; signed order to show cause.pdf; summons.pdf |

Dear Ms. Veiga:

As a courtesy, we are attaching hereto PDF files containing the documents that we caused to be filed with the Court on Tuesday, October 2, 2007, including the Order to Show Cause signed by the Court. Please let us know if you have any questions.

Best regards,

Frank

Frank J. Chesky III, Esq.
Carella, Byrne, Bain, Gilfillan,
 Cecchi, Stewart & Olstein
5 Becker Farm Road
Roseland, NJ  07068-1783
Tel.: 973.994.1700, ext. 579
Fax: 973.994.1744
fchesky@carellabyrne.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MATHIESON, | Docket No. |
| Plaintiff, | |
| -against- | |
| JOHN. C. DENIRO, | |
| Defendant. | |

## BRIEF IN SUPPORT OF PLAINTIFF CHRISTOPHER MATHIESON'S APPLICATION FOR AN ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, New Jersey 07068-1739
(973) 994-1700
*Attorneys for Plaintiff Christopher Mathieson*

On the Brief

JAMES E. CECCHI, ESQ.
LINDSEY H. TAYLOR, ESQ.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

      A. Formation and Purpose of JCD................................................................................2

      B. The Development and Operation of JCD's Business.................................................3

      C. JCD Expands Its Business to Include Residential Development Projects...................4

      D. The Purported Expulsion of Mathieson as a Member of JCD...................................5

      E. DeNiro's Financial Well-Being................................................................................8

LEGAL ARGUMENT ....................................................................................................... 8

POINT ONE........................................................................................................................ 9

PLAINTIFF IS ENTITLED TO A PRELIMINARY
INJUNCTION PRESERVING THE *STATUS QUO*....................................................9

A. The Standards for a Preliminary Injunction..............................................................9

B. Mathieson has Suffered Irreparable Harm...............................................................10

C. Mathieson has a Likelihood of Success on the Merits.............................................12

D. The Balance of Harms Weighs in Favor of Mathieson............................................14

E. A Constructive Trust Should be Placed on JCD's Assets.........................................15

CONCLUSION.................................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Arthur Guinness & Sons PLC v. Sterling Publishing Co., Inc.*, 732 F.2d 1095 (2d Cir. 1984) ................................................................................................................9

*Ford v. Reynolds*, 316 F.3d 351 (2d Cir. 2003) ................................................................9

*Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007).............10

*MONY Group, Inc. v. Highfield's Capital Management, L.P.*, 368 F.3d 138 (2d Cir. 2004) ................................................................................................................9

*Street v. Vitti*, 685 F. Supp. 379 (S.D.N.Y. 1988) ..........................................................10

### STATE CASES

*Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*, 2007 WL 2386457 (Sup.Ct. Suffolk Co. July 18, 2007)............................................................................10

*Simonds v. Simonds*, 58 A.D.2d 305, 396 N.Y.S.2d 547 (4th Dept. 1977) ......................15

### STATE STATUTES

N.Y. Limited Liability Company Law, §1102....................................................................11

N.Y. Real Property Laws, §§ 440, 441-a, 442-1..............................................................14

## PRELIMINARY STATEMENT

This brief is submitted in support of the application by plaintiff Christopher Mathieson ("Mathieson"), for a preliminary injunction prohibiting defendant John C. DeNiro ("DeNiro"), from taking further illegal acts, which will, in all likelihood, destroy JC DeNiro & Associates, L.L.C. ("JCD"), a real estate brokerage firm that Mathieson founded and built into a successful New York real estate company. In particular, Mathieson seeks an order restoring the *status quo,* as it existed prior to September 18, 2007, when DeNiro improperly locked Mathieson out of the business, and told him that he was "expelled" as a member – without explanation and without monetary compensation. This brief will show that a preliminary injunction is not only warranted as a matter of fact and law, but essential to preserve JCD as a viable and respected business.

## STATEMENT OF FACTS

**A.    Formation and Purpose of JCD.**

In or about mid-2002, Mathieson developed a plan for establishing and operating a residential real estate brokerage firm in lower Manhattan utilizing a grant from the Lower Manhattan Development Corporation.  In or about August 2002, Mathieson and DeNiro met while both men were in Boca Raton, Florida.  During their meeting, Mathieson mentioned his plan to start a real estate brokerage firm.  As conceived by Mathieson, the business was designed to fill a need in the New York real estate market – in particular, a boutique real estate brokerage firm that could provide personal service to customers at the high-end of the market.  DeNiro expressed interest in Mathieson's plan and suggested that they meet again to discuss it.

As a result, Mathieson developed a business plan for the proposed business, and shortly thereafter, he again met with DeNiro to discuss his ideas.  The parties eventually agreed to develop the project jointly by which both parties would be members of a newly formed company, JCD.  DeNiro agreed to contribute his know-how based on his experience in the real estate market as well as venture capital.  Mathieson would be responsible for starting up the company, attending to its day-to-day operations, soliciting accounts, and growing the business.

In or about October 2002, the parties signed an Operating Agreement for the company, which was prepared by Jose Lorenzo, Esq., DeNiro's long-time counsel.  Mathieson was not represented by an attorney in connection with the preparation, negotiation, and/or execution of the Operating Agreement.  To induce Mathieson to sign the Operating Agreement, DeNiro and Lorenzo told Mathieson that Lorenzo represented JCD and the best interests of both members. Upon information and belief, Lorenzo's and DeNiro's representations regarding Lorenzo's representation of JCD were false and misleading statements of material fact designed to induce

2

Mathieson to execute an Operating Agreement, which contained a variety of provisions that were unduly favorable to DeNiro.  Upon information and belief, Lorenzo represented only DeNiro's interest in connection with the preparation and execution of the Operating Agreement.

The Operating Agreement provided, *inter alia*, that DeNiro would have a 60% interest in the company and that Mathieson would have a 40% interest in the company, and that both parties had the right to participate in the management and conduct of the company's business.  On or about October 15, 2002, Mathieson and DeNiro filed papers forming JCD as a limited liability company under the laws of the State of New York.  As part of their agreement and in exchange for Mathieson's management of JCD's operations, Mathieson received 100% of the commissions on properties he sold for JCD.  DeNiro provided no personal assistance to JCD other than providing limited venture capital.  Under the parties' agreement, DeNiro was also entitled to receive 100% commission on any real estate sale he originated and closed.  Mathieson and DeNiro agreed that they would divide any profits generated from real estate sales originated by other brokers.  They similarly agreed that DeNiro and Mathieson would obtain salaries when JCD's cash flow was sufficient.

## B.    The Development And Operation of JCD's Business.

During the start-up period, Mathieson oversaw the day-to-day operations of the company, acquired office space, hired and trained personnel and agents, and developed business for the company.  JCD opened its first office in the TriBeCa neighborhood of Manhattan and began acquiring clients and signing deals in an area of Manhattan hard hit from the economic downturn caused by the September 11 terrorist attacks on the World Trade Center.

Between 2003 and 2005, Mathieson worked diligently to build JCD's business and reputation.  He personally supervised aspects of JCD's business, including the selection of office

3

space, furniture, the hiring and training of agents, and the development of the company's business. Because of his original idea, the business thrived and slowly grew into a recognized presence in the real estate market. As a consequence of Mathieson's efforts, JCD developed valuable good will associated with its brand and its signature method of operating in the New York City real estate marketplace.

Between 2003 and 2005, JCD continued to grow and expand its operations by opening additional locations on the Upper West Side, in Chelsea and the West Village, and opening and expanding its Chelsea location. Mathieson devoted substantial time and effort growing JCD's business, and deferred substantial earned commissions to pay for JCD's expansion, growth, and operation. In contrast, during the last five years, DeNiro visited New York City for a total of approximately 30 days, and did not contribute substantial time, energy, or resources to develop JCD's brand and business. In fact, during the last five years, DeNiro was responsible for referring only one customer to JCD.

## C.    JCD Expands Its Business To Include Residential Development Projects.

In or about 2005, Mathieson determined that JCD had an opportunity to expand its business by moving from simply a resale-based agency to one that also excelled at marketing and selling new developments. He explained his plan to DeNiro, and thereafter, undertook to expand JCD's business into the new development market. To achieve the objective of growing JCD's presence in the new development sector, Mathieson spent considerable time developing relationships with various developers.

In mid-2006, Mathieson secured JCD's first development contract for a new construction-leasing project on West 16th Street. In the first half of 2007, Mathieson secured several other exclusive agreements for new development projects, including: (i) the "Morgan

4

Lofts" condominiums located at 11 East 36th Street, which comprised approximately 30 sell and lease units; (ii) a new condominium development project located at 552 West 43rd Street; (iii) a new condominium development located at 111 Fulton Street with 105 units with a potential of 163 total units; and (iv) a new condominium project located at 123 Baxter Street with 23 units. These projects and other new development projects secured by Mathieson have successfully expanded JCD's business.

**D.     The Purported Expulsion Of Mathieson As A Member Of JCD.**

In or about spring 2007, DeNiro informed Mathieson that, contrary to the parties' long-standing agreement, he was unilaterally altering the parties' commission agreement. In particular, DeNiro stated that he would only agree to pay Mathieson an 80% of the total commission on resale accounts originated by Mathieson. Contrary to the facts, DeNiro claimed that these changes were necessitated by JCD's purported financial difficulties. Later that spring, DeNiro told Mathieson that he was also revising their commission agreement on new development projects, whereby he would only agree to pay Mathieson 10% of total commissions earned on new developments originated by Mathieson.

At the same time, DeNiro advised Mathieson that he was not going to let Mathieson make more money than he did. Apparently, DeNiro's separate Florida real estate ventures are not progressing well, and as a consequence, he is experiencing severe financial difficulties. As a result of these difficulties, DeNiro set in motion a scheme to divest Mathieson of his position within JCD and to divert JCD's liquid assets to himself. DeNiro also informed Mathieson that the $300,000.00 owed to Mathieson from deferred commissions was being reduced by 20%, and stated that the number would need to be further reduced because of additional expenses incurred by JCD.

Mathieson requested an accounting but DeNiro refused to provide one and refused to provide a time frame for paying Mathieson his unpaid commissions. Mathieson also requested that DeNiro provide him with information on JCD's debts and other financials, but DeNiro refused to provide any detailed information to Mathieson.

In mid-2007, Mathieson learned that DeNiro removed him as a signatory on JCD's bank account. On or about August 30, 2007, Mathieson submitted a commission invoice for a recent sale that he procured. Under the revised commission protocol imposed by DeNiro, Mathieson was entitled to receive 80% of the commission. Without notifying Mathieson, DeNiro reduced Mathieson's portion of the commission by $7,983.33 because DeNiro identified the sale as a referral that he made. DeNiro later explained the withholding was a mistake but stated he needed additional information unrelated to this transaction before he cut another check for the withheld money owed to Mathieson.

Contrary to DeNiro's continued assertion that JCD was in "bad shape," monthly statements from JCD's bank account showed approximate monthly averages of $500,000.00 in gross commissions up to September 1, 2007, which was substantially more than the monthly average for 2006. In addition, JCD's gross income for June 2007 was $965,897.02, which was JCD's single highest month ever for gross commissions.

On or about September 18, 2007, DeNiro came to New York and told Mathieson that he was being "expelled" as a member of JCD and that DeNiro had no intention of compensating him for his membership interest. He also physically barred Mathieson from JCD's offices, and terminated Mathieson's e-mail account and cell phone service. DeNiro then instructed JCD employees to withhold Mathieson's paycheck, as well as commission income due to him from JCD. Around this time, Mathieson overheard DeNiro disparage him in front of JCD

6

employees and told them that he does not care if they all leave the company because he will hire new agents.

On or about September 20, 2007, DeNiro and others working with him stole Mathieson's car from the New York City parking garage where it was parked. It is believed that DeNiro gave permission to his granddaughter to use the vehicle. Approximately, two days after the theft, Mathieson's car was returned to the parking garage without explanation. On September 28, 2007, DeNiro or his granddaughter again stole Mathieson's car from the parking garage by lying to the garage attendant that the vehicle did not belong to Mathieson. Since then, DeNiro has not returned Mathieson's vehicle.

To date, Mathieson has not received any written communication from DeNiro setting forth his reasons for purportedly expelling Mathieson as a member of JCD. In fact, up until October 1, 2007, Mathieson was still identified as the managing member of JCD on JCD's Web site, and his name still appeared on the doors and in the windows at JCD's offices. It is believed that JCD also continues to solicit business using Mathieson's reputation and through accounts procured by Mathieson, closings continue to occur on accounts originated by Mathieson for which Mathieson has not been paid. In addition, Mathieson is the licensed real estate broker for JCD. If DeNiro is not also a licensed real estate broker for JCD, which it is believed he is not, and Mathieson is not longer affiliated with JCD, as alleged by DeNiro, then the real estate salespersons employed by JCD would be doing business without being affiliated with a licensed broker for JDC in violation of New York law.

On September 26, 2007, Mathieson, through his counsel, demanded that DeNiro restore the *status quo* as it existed prior to his illegal actions against Mathieson. Mathieson further demanded that safeguards be implemented to insure that corporate funds were not diverted to

DeNiro or anyone else for inappropriate or extraordinary expenditures. DeNiro has not responded to Mathieson's demands and has refused to restore the *status quo*.

**E.     DeNiro's Financial Well-Being.**

In or about 2006, Mathieson learned that DeNiro was experiencing mounting financial problems with his own real estate ventures in Florida, resulting from declining market conditions, overruns, delays, hurricanes, and litigations, and that DeNiro was liquidating his assets, including his primary residence. Evidence of this appeared on or about July 31, 2007, when DeNiro transferred $130,000.00 by wire from JCD's corporate bank account to a separate corporate account for one of his developments in Florida. This occurred after DeNiro removed Mathieson as a signatory on JCD's bank account. Although the money was returned the following day, DeNiro improperly commingling JCD's liquid assets with unrelated (and failing) development projects originated by DeNiro in Florida.

Mathieson has since learned that DeNiro is trying to sell JCD and has taken steps to replace Mathieson as manager of LCD. DeNiro has apparently stated recently that he thinks JCD is worth $5,000,000.00. DeNiro also apparently offered Stephen McArdle, a former employee of JCD, a job with JCD along with a 25% interest in the company.

DeNiro has also told some of LCD's agents that he does not care if they all leave JCD since he will just hire new agents and that agents can be replaced. Mathieson believes DeNiro has systematically removed Mathieson from financial control of firm and continues over time to decrease monies due and payable to Mathieson in order to increase monies to DeNiro for Mathieson's work. DeNiro has systematically removed Mathieson from financial control of firm and continues over time to decrease monies due and payable to Mathieson in an apparent attempt

to increase monies to DeNiro for Mathieson's work and to sell LCD without the consent of Mathieson.

## LEGAL ARGUMENT

### PLAINTIFF IS ENTITLED TO
### A PRELIMINARY INJUNCTION
### PRESERVING THE *STATUS QUO*

Mathieson respectfully requests that the Court enter a preliminary injunction allowing him to continue as a manager of JCD pending a final resolution of this matter. In the alternative, Mathieson respectfully requests that the Court direct that procedures are put in place such that DeNiro is unable to divert JCD's assts to either himself or his struggling Florida real estate ventures. As set forth in the Statement of Facts and the accompanying Declaration of Christopher Mathieson, Mathieson was wrongfully expelled from JCD as a member and as a manager. He seeks a preliminary injunction allowing him to continue his duties as a member and manager of JCD pending a final resolution of the suit. Indeed, as will be shown, all of the good will and value that Mathieson has created in JCD will, in all likelihood, be destroyed if DeNiro is permitted to operate JCD without Mathieson's input and expertise.

### A.    The Standards For A Preliminary Injunction.

The purpose of a preliminary injunction is to preserve the *status quo* pending the final determination of the dispute. *Arthur Guinness & Sons PLC v. Sterling Publ'g Co., Inc.*, 732 F.2d 1095, 1099 (2d Cir. 1984). In order to obtain a preliminary injunction, the movant must demonstrate: 1) that it will be irreparably harmed in the absence of an injunction; and 2) either a likelihood of success on the merits or sufficiently serious questions going to the merits of the case to make it a fair ground for litigation and the balance of hardships tipping decidedly in its favor. *MONY Group, Inc. v. Highfield's Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2d Cir. 2004). Irreparable harm is harm requiring a remedy other than mere money damages. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). Irreparable harm is harm that cannot be remedied if the court

waits until the end of trial to resolve the harm. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Damage to business reputation and goodwill can be difficult or impossible to quantify and, as a result, qualifies as irreparable harm. *Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*, 2007 WL 2386457 (Sup.Ct. Suffolk Co. July 18, 2007). The loss of the right to inspect an entity's books and records also constitutes irreparable harm. *Street v. Vitti*, 685 F.Supp. 379, 384 (S.D.N.Y. 1988) (shareholder loss of right to inspect corporation's books and records constituted irreparable harm).

**B.    Mathieson Has Suffered Irreparable Harm.**

Mathieson has suffered irreparable harm in two separate ways because of DeNiro's freeze out. First, DeNiro's termination of Mathieson's authority as a member manager constitutes irreparable harm. Mathieson's right to have a say in the management of JCD cannot be valued, nor can it be compensated with money damages at the end of the case. It is an ongoing right to participate in the operation of the business and to make decisions when they need to be made. Continuing to have this right cannot wait until the end of the case.

Paragraph 5.1 of the Operating Agreement provides that "[a]ll Members have the right to participate in the management and conduct of JCD's business." Paragraph 7.7 further provides that, "[a] dissociating Member will cease to be a Member when the other Members elect to cause JCD to purchase the dissociating Member's interest pursuant to this section of this agreement relating to the effect of a Member's dissociation." Thus, under the clear terms of the Operating Agreement, notwithstanding DeNiro's actions, Mathieson remains a member of JCD until DeNiro elects to purchase Mathieson's interest in JCD.

As is set forth in the Statement of Facts and in Mathieson's Declaration, Mathieson was wrongfully expelled as a member of JCD. Mathieson is aware of no reasonable basis for his

expulsion and DeNiro has not identified one.   Indeed, DeNiro has affirmatively stated to Mathieson that he refuses to pay Mathieson any monies for his membership interest in JCD. Having made this statement, and having taken affirmative steps to divest Mathieson of his interest and ability to protect that interest, it is clear that injunctive relief – at least to preserve the *status quo* as it existed prior to DeNiro's illegal actions – is warranted.  It is only through this Court's equity power that the good will and reputation that Mathieson created in JCD can be protected pending final judgment.  An alternative conclusion would reward DeNiro's illegal actions without protecting Mathieson in any way.

Furthermore, regardless of whether there was appropriate cause under the Operating Agreement to expel him as a member (a fact Mathieson disputes and which DeNiro has not articulated), Mathieson remains a member of JCD until the company is dissolved in accordance with Section 7.3 of the Operating Agreement or DeNiro elects to purchase Mathieson's membership interest in accordance with Section 7.5 of the Operating Agreement.  DeNiro has provided no indication that he intends to dissolve or liquidate JCD and has vowed not to purchase Mathieson's membership interest.  As a result, Mathieson remains a member of JCD. So long as Mathieson remains a member of JCD, he has the right to participate in the management and control of JCD.  So long as DeNiro prevents Mathieson from participating in the management of JCD, Mathieson is irreparably harmed.

Mathieson is also suffering irreparable harm by being excluded from inspecting JCD's books and records.  New York Limited Liability Company Law § 1102(b) provides:

> Any member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonably related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years

and other information regarding the affairs of the limited liability company as is just and reasonable.

Even prior to Mathieson's purported expulsion from JCD, DeNiro severely restricted Mathieson's access to JCD's financial records. By barring Mathieson from JCD's premises, DeNiro has effectively removed Mathieson's ability had to review JCD's books and records so that he can safeguard his own interest in JCD. As part and parcel of restoring Mathieson as a manager of JCD, Mathieson should be granted full access to JCD's books and records so that Mathieson may exercise fully and effectively his managerial rights as a member of JCD, as well as monitor JCD's financial affairs to protect his 40% interest in JCD.

At the very least, the Court should intervene to impose appropriate financial safeguards (including the requirement of two signatures on all checks and/or the appointment of a Special Fiscal Agent), to insure that while the substantive aspects of this action are litigated, the financial well being of JCD is preserved.

## C.    Mathieson Has A Likelihood Of Success On The Merits.

Mathieson is reasonably likely to succeed on the merits of his claims. DeNiro wrongfully expelled him from JCD without explanation. In so doing, DeNiro has already seriously damaged the good will and reputation of both Mathieson and JCD. Further, regardless of whether DeNiro wrongfully expelled Mathieson from JCD, Mathieson is entitled to be paid for his 40% interest in JCD, and until he is paid, Mathieson remains a member of JCD.

Paragraph 7.2 of the Operating Agreement provides:

A Member may be expelled from JCD by an affirmative vote of the Members holding a majority of the ownership interests held by Members other than the expelled Member if the expelled Member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of JCD or the expelled Member has willfully or persistently committed a material breach of the articles of organization of JCD or this agreement or has otherwise breached a duty owed

to JCD or to the other Members to the extent that it sis not reasonably practicable to carry on the business or affairs of JCD with the expelled member.

DeNiro wrongfully expelled Mathieson from JCD because there were no grounds to do so under the terms of the Operating Agreement. Indeed, DeNiro has not identified any basis under the Operating Agreement for terminating Mathieson; he simply showed Mathieson the door. Mathieson had been managing JCD's affairs as he had been since its inception in accordance with the terms of the Operating Agreement. As a result, JCD's business has thrived. Nevertheless, DeNiro expelled Mathieson with no explanation. DeNiro's expulsion of Mathieson without cause is a material breach of the Operating Agreement.

Even assuming that there might arguably be some cause for expelling Mathieson from JCD, DeNiro has still breached the Operating Agreement by refusing to pay Mathieson for his interest in JCD. Section 7.3 of the Operating Agreement provides that the expulsion of a member operates to dissolve JCD. Section 7.4 provides, however, that the continuing member of JCD has the option to continue JCD's business if he buys out the dissociated member's interest in JCD. Section 7.5 sets forth the formula under which the dissociated member's interest is to be purchased. DeNiro has also breached these provisions in the Operating Agreement because when he expelled Mathieson from JCD, he stated in no uncertain terms that he intended to continue to operate JCD and pay Mathieson nothing for his interest. Mathieson has since learned that DeNiro may, in fact, be attempting to sell JCD.

That course of action is plainly contrary to the Operating Agreement. Either JCD must be liquidated, with the parties dividing the proceeds 60-40, or DeNiro must buy out Mathieson's interest in JCD. No matter what, DeNiro cannot operate or sell JCD without paying Mathieson for his share of the business. Without election and full payment to Mathieson, JCD's day-to-day

14

operations are without management. If this is allowed to continue, the value of Mathieson's membership interest will be irreparably harmed.

In addition, as is set forth above, DeNiro has breached the Operating Agreement terminating Mathieson's managerial authority, contrary to Section 7.7 of the Operating Agreement. Until DeNiro buys out Mathieson's membership interest, Mathieson remains a member of JCD, with the right to manage JCD's affairs.

Plainly, Mathieson is reasonable likelihood of success on the merits. DeNiro has flagrantly breached several sections of the Operating Agreement, giving rise to claims on Mathieson's behalf.

**D.    The Balance Of Harms Weighs In Favor Of Mathieson.**

As is set forth above, Mathieson has been forced out of JCD, notwithstanding the fact that he remains a member of JCD. There would be no harm to DeNiro if the *status quo* were restored allowing Mathieson to resume his place as a manager of JCD, a position he has occupied since JCD was formed. The injunction would be an affirmative benefit to Mathieson, since it would allow him to protect his interest in the business until there is a final decision as to how the dispute between the parties should be resolved.

Indeed, an injunction is necessary to protect the value of the Company pending a resolution of the dispute between Mathieson and DeNiro. Although DeNiro is a licensed New York real estate broker, he is not licensed for JCD. Only Mathieson is licensed for JCD. A real estate salesperson must be affiliated with a licensed broker. *See* N.Y. Real Property Law §§ 440, 441-a, 442-1. If Mathieson is expelled from JCD, as DeNiro claims he is, then JCD cannot legally do business, since the real estate salespersons employed by JCD would be doing business without being affiliated with a licensed broker for JDC. DeNiro cannot at the same time expel

Mathieson from the Company while at the same time using his brokerage license to continue JCD's business. In order to allow JCD to continue to conduct business legally, Mathieson must be allowed to resume his membership and managerial responsibilities with JCD.

## E.    A Constructive Trust Should Be Placed On JCD's Assets.

A constructive trust is a remedial device created by the court to compel a person who holds legal title to property subject to an equitable duty to convey to another, to do so because he would be unjustly enriched if he were permitted to retain the property. *Simonds v. Simonds*, 58 A.D.2d 305, 308, 396 N.Y.S.2d 547, 550 (4th Dept. 1977). "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.*, 58 A.D.2d at 309, 396 N.Y.S.2d at 550 (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)).

A constructive trust should be imposed upon JCD's assets. As is set forth above, DeNiro has previously co-mingled his own assets with those of JCD for personal benefit. He has also recently undertaken steps to sell the company and appoint new members to the company all in direct contravention of JCD's Operating Agreement. These acts clearly demonstrate DeNiro's determination to usurp absolute control of JCD's assets with an intent to deprive Mathieson of his right to partake in the management of JCD and his membership share in the company. Under the circumstances, DeNiro would be unjustly enriched for him to control JCD's assets of which Mathieson has a vested interest. As a result, a constructive trust should be imposed upon all of JCD's assets in favor of Mathieson.

16

## CONCLUSION

For the reasons set forth above, Mathieson satisfies the requirements for the issuance of a preliminary injunction allowing him to remain as a manager of JCD. He has demonstrated irreparable harm, a likelihood of success on the merits, and that the balance of harms weighs in his favor. As a result, he respectfully requests that the Court issue a preliminary injunction in his favor.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
*Attorneys for Plaintiff Christopher Mathieson*

By: _____
LINDSEY H. TAYLOR

Dated: October 2, 2007

JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**  CHRISTOPHER MATHIESON

**DEFENDANTS**  JOHN C. DENIRO

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**

Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein
5 Becker Farm Rd., Roseland, NJ 07060   (973) 994-1700

**ATTORNEYS (IF KNOWN)**

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Breach of contract and fiduciary duty relating to membership share in limited liability company.

Has this or a similar case been previously filed in SDNY at any time? No ☒  Yes? ☐   Judge Previously Assigned

If yes, was this case  Vol.☐  Invol. ☐  Dismissed. No ☐ Yes ☐   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*                    NATURE OF SUIT

ACTIONS UNDER STATUTES

### TORTS

**CONTRACT**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [x] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**PERSONAL INJURY**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS

**PERSONAL INJURY**
- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**PRISONER PETITIONS**
- [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

**FORFEITURE/PENALTY**
- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**
- [ ] 861 HIA (1395FF)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 TAXES
- [ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURE ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____   DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

*(PLACE AN x IN ONE BOX ONLY)*                                              **ORIGIN**

[X] 1 Original
    Proceeding
[ ] 2a. Removed from
        State Court
[ ] 2b. Removed from State Court
        AND at least one party is a pro se litigant
[ ] 3 Remanded from
      Appellate Court
[ ] 4 Reinstated or
      Reopened
[ ] 5 Transferred from
      (Specify District)
[ ] 6 Multidistrict
      Litigation
[ ] 7 Appeal to District
      Judge from
      Magistrate Judge
      Judgment

*(PLACE AN x IN ONE BOX ONLY)*                      **BASIS OF JURISDICTION**

[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION
                                                  (U.S. NOT A PARTY)
[X] 4 DIVERSITY

*IF DIVERSITY, INDICATE
CITIZENSHIP BELOW.
(28 USC 1332, 1441)*

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [X] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [X] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

34 Eighth Avenue, 5A
New York, NY 10014

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

824 East Atlantic Ave., Ste. 7
Delray Beach, FL 33483

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS   [X] FOLEY SQUARE
             (DO NOT check either box if this a PRISONER PETITION.)

| DATE | SIGNATURE OF ATTORNEY OF RECORD | ADMITTED TO PRACTICE IN THIS DISTRICT |
|---|---|---|
| 10/02/2007 | | [ ] NO |
| RECEIPT # | | [X] YES (DATE ADMITTED Mo. _____ Yr. 1989 ) |
| | | Attorney Bar Code # LT7234 |

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

JAMES E. CECCHI
LINDSEY H. TAYLOR
CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, New Jersey 07068-1739
(973) 994-1700
*Attorneys for Plaintiff Christopher Mathieson*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER MATHIESON,<br><br>Plaintiff,<br><br>-against-<br><br>JOHN. C. DENIRO,<br><br>Defendant. | Docket No.<br><br><br>**VERIFIED COMPLAINT<br>AND JURY TRIAL DEMAND** |

Plaintiff Christopher Mathieson ("Mathieson" or "Plaintiff"), by way of a Verified Complaint against Defendant John C. DeNiro ("DeNiro" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.      This Verified Complaint asserts claims against DeNiro stemming out of his unlawful efforts to seize sole control of JC DeNiro & Associates, L.L.C. ("JCD"), a successful real estate brokerage business founded and built by Mathieson. In particular, this Verified Complaint alleges that DeNiro has, contrary to his contractual and fiduciary responsibilities, implemented a comprehensive scheme to divest Mathieson of his membership interest in JCD and to divert JDC's assets to DeNiro. To accomplish this unlawful objective, DeNiro has engaged in a variety of tortious and contractually prohibited acts against Mathieson including, but not limited to: (1) preventing Mathieson from accessing JCD's offices; (2) converting Mathieson's membership interest in JCD without compensation; (3) converting Mathieson's

earned wages; (4) converting and seizing control of Mathieson's car; (5) preventing Mathieson from conducting the affairs of JCD; (6) attempting to sell the assets of JCD without Mathieson's approval; and (7) defaming Mathieson.

2.       This Verified Complaint seeks an accounting of JCD to establish Mathieson's economic interest in JCD and the monies due to him from JCD, both as a consequence of past transactions as well as ongoing real estate transactions scheduled to close in the coming months. This Verified Complaint also asserts claims for constructive trust, unjust enrichment, breach of contract, and breach of fiduciary duty relating to DeNiro's purported expulsion of Mathieson as a member of JCD.  In addition, this Verified Complaint asserts claims for conversion and constructive trust relating to DeNiro's unlawful attempt to sell or dispose of all or substantially all of JCD's assets without Mathieson's consent.

## THE PARTIES

3.       Plaintiff Christopher Mathieson is a citizen of the State of New York, residing at 34 Eighth Avenue, 5A, New York, New York 10014.  Mathieson is a member of JCD.

4.       Defendant John C. DeNiro is a citizen of the State of Florida, and maintains a principal place of business at 824 East Atlantic Avenue, Suite 7, Delray Beach, Florida 33483. DeNiro is a member of JCD.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction of this claim pursuant to 28 U.S.C. § 1332(a) because it is between citizens of different States and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Mathieson resides in this judicial district and a substantial part of the events giving rise to this claim occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

A.      **Formation And Purpose Of JCD.**

7.      In or about mid-2002, Mathieson developed a plan for establishing and operating a residential real estate brokerage firm in lower Manhattan utilizing a grant from the Lower Manhattan Development Corporation.

8.      In or about August 2002, Mathieson and DeNiro met while both men were in Boca Raton, Florida.

9.      During their meeting, Mathieson mentioned his plan to start a real estate brokerage firm. As conceived by Mathieson, the business was designed to fill a need in the New York real estate market – in particular, a boutique brokerage firm that could provide personal service to customers at the high-end of the market. DeNiro expressed interest in Mathieson's plan and suggested that they meet again to discuss it.

10.     As a result, Mathieson developed a business plan for the proposed business, and shortly thereafter, he again met with DeNiro to discuss his ideas.

11.     The parties eventually agreed to jointly develop the project by which both parties would be members of a newly formed company, JCD. DeNiro agreed to contribute his know-how based on his experience in real estate as well as venture capital. Mathieson would be responsible for starting up the company, attending to its day-to-day operations, soliciting accounts, and growing the business.

3

12.    In or about October 2002, the parties signed an Operating Agreement for the company, which was prepared by Jose Lorenzo, Esq., DeNiro's long-time counsel.

13.    Mathieson was not represented by an attorney in connection with the preparation, negotiation, and/or execution of the Operating Agreement.

14.    To induce Mathieson to sign the Operating Agreement, DeNiro and Lorenzo told Mathieson that Lorenzo represented JCD and the best interests of both members.

15.    Upon information and belief, Lorenzo's and DeNiro's representations regarding Lorenzo's representation of JCD were false and misleading statements of material fact designed to induce Mathieson to execute an Operating Agreement, which contained a variety of provisions that were unduly favorable to DeNiro.

16.    Upon information and belief, Lorenzo represented only DeNiro's interest in connection with the preparation and execution of the Operating Agreement. As a consequence of Lorenzo's and DeNiro's false statements regarding Lorenzo's representation of JCD, and as a consequence of Lorenzo's conflict of interest, the Operating Agreement is either void *ab initio* or voidable in part.

17.    The Operating Agreement provided, *inter alia*, that DeNiro would have a 60% interest in the company and that Mathieson would have a 40% interest in the company, and that both parties had the right to participate in the management and conduct of the JCD's business.

18.    On or about October 15, 2002, Mathieson and DeNiro filed papers forming JCD as a limited liability company under the laws of the State of New York.

19.    As part of their agreement and in exchange for Mathieson's management of JCD's operations, Mathieson received 100% of the commissions on properties he sold for JCD. DeNiro provided no personal assistance to JCD other than providing limited venture capital.

4

20.    Under the parties' agreement, DeNiro was also entitled to receive 100% commission on any real estate sale he originated and closed. Mathieson and DeNiro agreed that they would divide profits generated from real estate sales originated by other brokers. They similarly agreed that DeNiro and Mathieson would obtain salary when JCD's cash flow was sufficient.

## B.    The Development And Operation of JCD's Business.

21.    During the start-up period, Mathieson oversaw the day-to-day operations of the company, acquired office space, hired and trained personnel and agents, and developed business for the company.

22.    JCD opened its first office in the TriBeCa neighborhood of Manhattan and began acquiring clients and signing deals in an area of Manhattan hard hit from the economic downturn caused by the September 11th terrorist attacks on the World Trade Center.

23.    Between 2003 and 2005, Mathieson worked diligently to build JCD's reputation and business. He personally supervised aspects of JCD's business, including the selection of office space, furniture, the hiring and training of agents, and growing the business of the company. Because of his original idea, the business thrived and slowly grew into a recognized presence in the real estate market. As a consequence of Mathieson's efforts, JCD developed valuable good will associated with its brand and its signature method of operating in the New York City real estate marketplace.

24.    Between 2003 and 2005, JCD continued to grow and expand its operations by opening additional locations on the Upper West Side, in Chelsea and the West Village, and opening and expanding its Chelsea location.

25.    Mathieson devoted substantial time and effort growing JCD's business, and deferred substantial earned commissions to pay for JCD's expansion, growth, and operation.

26.    The deferred earned commissions constitute loans repayable to Mathieson at normal and prevailing interest rates.

27.    In contrast, during the last five years, DeNiro visited New York City for a total of approximately 30 days, and did not contribute substantial time, energy or resources to develop JCD's brand and business.  In fact, during the last five years, DeNiro was responsible for referring only one customer to JCD.

**C.    JCD Expands Its Business To Include Residential Development Projects.**

28.    In or about 2005, Mathieson determined that JCD had an opportunity to expand its business by moving from simply a resale-based agency to one that also excelled at marketing and selling new developments.  He explained his plan to DeNiro, and thereafter, undertook to expand JCD's business into the new development market.

29.    To achieve the object of growing JCD's presence in the new development sector, Mathieson spent considerable time developing relationships with various developers.

30.    In mid-2006, Mathieson secured JCD's first development contract for a new construction leasing project on West 16th Street.

31.    In the first half of 2007, Mathieson secured several other exclusive agreements for new development projects, including: (i) the "Morgan Lofts" condominiums located at 11 East 36th Street, which comprised approximately 30 sell and lease units; (ii) a new condominium development project located at 552 West 43rd Street; (iii) a new condominium development located at 111 Fulton Street with 105 units with a potential of 163 total units; and (iv) a new condominium project located at 123 Baxter Street with 23 units.

32.     These projects and other new development projects secured by Mathieson have successfully expanded JCD's business.

**D.    The Purported Expulsion Of Mathieson As A Member Of JCD.**

33.     In or about spring 2007, DeNiro informed Mathieson that, contrary to the parties' long-standing agreement, he was unilaterally altering the parties' commission agreement.  In particular, DeNiro stated that he would only agree to pay Mathieson an 80% of the total commission on resale accounts.  Contrary to the facts, DeNiro claimed that these changes were necessitated by JCD's purported financial difficulties.

34.     Later that spring, DeNiro told Mathieson that he was also revising their commission agreement on new development projects, whereby he would only agree to pay Mathieson 10% of total commissions earned on new developments originated by Mathieson.

35.     At the same time, DeNiro advised Mathieson that he was not going to let Mathieson make more money than him.

36.     DeNiro also informed Mathieson that the $300,000.00 owed to Mathieson from deferred commissions was being reduced by 20%, and stated that the number would need to be further reduced because of additional expenses incurred by JCD.

37.     Mathieson requested an accounting but DeNiro refused to provide one and refused to provide a time frame for paying Mathieson his unpaid commissions.

38.     Mathieson also requested that DeNiro provide him with information on JCD's debts and other financials, but DeNiro refused to provide any detailed information to Mathieson.

39.     In mid-2007, Mathieson learned that DeNiro removed him as a signatory on JCD's bank account.

40.    On or about August 30, 2007, Mathieson submitted a commission invoice for a recent sale that he procured.   Under the revised commission protocol imposed by DeNiro, Mathieson was entitled to receive 80% of the commission.

41.    Without notifying Mathieson, DeNiro reduced Mathieson's portion of the commission by $7,983.33 because DeNiro identified the sale as a referral that he made.

42.    DeNiro later explained the withholding was a mistake but stated he needed additional information unrelated to this transaction before he cut another check for the withheld money owed to Mathieson.

43.    Contrary to DeNiro's continued assertion that JCD was in "bad shape," monthly statements from JCD's bank account showed approximate monthly averages of $500,000.00 in gross commissions up to September 1, 2007, which was substantially more than the monthly average for 2006.  In addition, JCD's gross income for June 2007 was $965,897.02, which was JCD's single highest month ever for gross commissions.

44.    On or about September 18, 2007, DeNiro came to New York and told Mathieson that he was being "expelled" as a member of JCD and that DeNiro had no intention of paying him a penny for his membership interest.  DeNiro also physically barred Mathieson from JCD's offices and terminated Mathieson's e-mail account and cell phone service.

45.    Contrary to New York law, DeNiro has also instructed JCD employees to withhold Mathieson's paycheck, as well as commission income due to him from JCD.

46.    On or about September 20, 2007, DeNiro and others working with him stole Mathieson's car from the New York City parking garage where it was parked.  Upon information and belief, DeNiro gave permission to his granddaughter to use the vehicle.  Approximately, two days after the theft, Mathieson's car was returned to the garage without explanation.

47.    On September 28, 2007, DeNiro and/or his granddaughter again stole Mathieson's car from the parking garage by lying to the garage attendant that the vehicle did not belong to Mathieson. They have yet to return Mathieson's car.

48.    Upon information and belief, DeNiro is attempting to sell JCD and has taken steps to replace Mathieson as manager of JCD.

49.    Upon information and belief DeNiro recently stated that JCD was worth $5,000,000.00. Upon information and belief, DeNiro also offered Stephen McArdle, a former employee of JCD, a job with JCD along with a 25% interest in the company.

50.    Shortly after their meeting on September 18 2007, DeNiro disparaged Mathieson in front of JCD employees and told them that he does not care if they all leave the company because he will hire new agents.

51.    To date, Mathieson has not received any written communication from DeNiro setting forth his reasons for purportedly expelling Mathieson as a member of JCD.

52.    Up until October 1, 2007, Mathieson was still identified as the managing member of JCD on JCD's Web site, and his name still appeared on the doors and in the windows at JCD's offices.

53.    Upon information and belief, JCD continues to solicit business using Mathieson's reputation and through accounts procured by Mathieson, closing continue to occur on accounts originated by Mathieson for which Mathieson has not been paid.

54.    Mathieson is the licensed real estate broker for JCD.

55.    Upon information and belief, DeNiro is not also a licensed real estate broker for JCD with the State of New York.

9

56.    If Mathieson is not longer affiliated with JCD, as alleged by DeNiro, then the real estate salespersons employed by JCD would be doing business without being affiliated with a licensed broker for JDC in violation of New York law.

57.    On September 26, 2007, Mathieson, through counsel, demanded that DeNiro restore the *status quo* as it existed prior to his illegal actions against Mathieson.  Mathieson further demanded that safeguards be implemented to insure that corporate funds were not diverted to DeNiro or anyone else for inappropriate or extraordinary expenditures.

58.    To date, DeNiro has refused to respond to Mathieson's demands and has refused to reverse the illegal actions taken against Mathieson.

59.    The actions taken by DeNiro are designed to enrich himself to the exclusion of Mathieson and JCD.

60.    DeNiro's actions are illegal and have already caused significant damage to both Mathieson and JCD.

61.    Without Mathieson's participation and guidance, JCD will, in all likelihood, be unable to survive.

**E.    DeNiro's Financial Well-Being.**

62.    In or about 2006, Mathieson learned that DeNiro was experiencing mounting financial problems with his own real estate ventures in Florida, resulting from declining market conditions, overruns, delays, hurricanes, and litigations, and that DeNiro was liquidating his assets, including his primary residence. As a consequence, he is experiencing severe financial difficulties.  As a result of these difficulties, DeNiro set in motion the aforementioned scheme to divest Mathieson of his position within JCD and to divert JCD's liquid assets to himself.

63.    On or about July 31, 2007, after DeNiro had removed Mathieson as a signatory on JCD's bank account, DeNiro transferred $130,000.00 by wire from JCD's corporate bank account to a separate corporate account for one of his developments in Florida. Although the money was returned the following day, DeNiro is improperly commingling JCD's liquid assets with unrelated (and failing) development projects originated by DeNiro in Florida.

## FIRST CAUSE OF ACTION
### (Access to Company Books and Records)

64.    Mathieson repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

65.    Section 6.1 of the Operating Agreement provides: "The Members must keep such books and records relating to the operation of the company as are appropriate and adequate for the company's business and for the carrying out of this agreement."

66.    Section 6.1 of the Operating Agreement also provides: "Each Member will have access to all such books and records at all times."

67.    New York Limited Liability Company Law § 1102(b) provides a member with the right to inspect a limited liability company's books and records and any other information regarding the affairs of the company.

68.    DeNiro has failed and refused to provide Mathieson with access to JCD's books and records, information with respect to JCD's affairs, Mathieson's membership interest, and the purported sale of JCD.

69.    Mathieson is entitled to receive this information and is entitled to review JCD's original books and records relating to its affairs.

70.    DeNiro has no reasonable basis to refuse to provide this information to Mathieson or to prevent Mathieson from inspecting JCD's books and records.

71.    Mathieson has been damaged by DeNiro's failure to permit inspection of all of the books and records of JCD.

72.    WHEREFORE Plaintiff hereby demands the following relief against Defendant:

a.    An order granting Plaintiff, or his representative(s), the right to inspect JCD's books and records;

b.    An order requiring Defendant to provide information requested by Plaintiff related to JCD's affairs;

c.    Compensatory damages;

d.    Attorney's fees;

e.    Costs of suit; and

f.    Such other relief as the Court deems equitable and just.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

73.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

74.    DeNiro has breach his agreement with Mathieson by, *inter alia*:

i.    Impeding Mathieson's right to participate in the management and conduct of JCD;

ii.    Improperly and without authority, attempting to sell or otherwise transfer or dispose of the property or assets of JCD, and/or admitting additional members to the company;

iii.    Violating his duties and obligations to JCD by engaging in acts of self interest by using or usurping the assets of JCD;

iv.    Improperly terminating Mathieson as the managing member of JCD;

12

v.      Improperly expelling Mathieson as a member of JCD;

vi.     Refusing to pay wages and commission earned by Mathieson; and

vii.    Refusing to pay Mathieson for his membership interest in JCD;

75.     As a direct and proximate result of DeNiro's breach as aforesaid, Mathieson has and will continue to suffer damages, including but not limited to, the diminution in the value of his membership interest in JCD.

76.     Mathieson has no adequate remedy at law.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.      Compensatory damages, including but not limited to the diminution in the value of Plaintiff's membership interest in JCD;

b.      Punitive damages;

c.      Interest;

d.      Cost of suit;

e.      Attorney's fees; and

f.      Such other relief as the Court deems equitable and just.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

77.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

78.     DeNiro has a fiduciary duty to conduct JCD's affairs according to principles of good faith and utmost fidelity.

79.     DeNiro breached the aforesaid obligations by, *inter alia*: (1) attempting to sell or otherwise transfer or dispose of the property or assets of JCD without authorization from Plaintiff; (2) engaging in self-dealing by authorizing purported loans to either himself and/or

13

affiliated entities; (3) failing to distribute monies to Mathieson; (4) refusing Mathieson access to JCD's books and records; (5) improperly and without justification terminating Mathieson as the managing member of JCD; (6) improperly and without justification expelling Mathieson as a member of JCD; and (7) attempting to sell JCD and/or admit additional members without the consent of Mathieson.

80.    Plaintiff has suffered special injury as a result of DeNiro's misconduct.

81.    Plaintiff does not have an adequate remedy at law.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.    A temporary, preliminary, and permanent injunction enjoining Defendant from refusing Plaintiff access to JCD's books and records;

b.    A temporary, preliminary and permanent injunction enjoining Defendant from terminating Plaintiff as the managing member of JCD;

c.    A temporary, preliminary, and permanent injunction enjoining Defendant from withdrawing any funds from JCD's corporate bank account for personal reasons;

d.    An order permitting Plaintiff to appoint an interim agent to manage the corporate affairs of JCD, or in the alternative, a receiver appointed by the Court to manage the corporate affairs of JCD until further order of the Court;

e.    A temporary, preliminary, and permanent injunction enjoining Defendant and/or any agent, servant, employee, or attorney acting on his behalf, from transferring, converting, accessing, and/or withdrawing in full or any portion of JCD's assets;

f.    An order declaring that Defendant has violated and breached the Operating Agreement and his fiduciary duties of loyalty and fidelity;

g.   A temporary injunction enjoining and restraining Defendant and any persons in active concert or participation with him from withdrawing, disbursing, transferring, pledging, hypothecating or otherwise dissipating or encumbering in any manner all assets maintained by and on behalf of JCD;

h.   A temporary and preliminary injunction enjoining Defendant from disposing, pledging, assigning, transferring, hypothecating, or otherwise dissipating or encumbering in any manner all assets subject to the constructive trust;

i.   Damages, including the return and disgorgement of all monies owed to Plaintiff, including wages and commissions;

j.   Interest;

k.   Cost of suit;

l.   Attorney's fees; and

m.   Such other relief as the Court deems equitable and just.

### FOURTH CAUSE OF ACTION
**(Membership Accounting)**

82.   Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

83.   Upon information and belief, DeNiro, as the majority member of JCD, has undertaken acts to sell or dissipate all or substantially all of JCD's assets;

84.   DeNiro has improperly and without justification expelled Mathieson as a member of JCD;

85.   DeNiro has refused Mathieson access to JCD's books and records;

86.    As a result of the foregoing, Plaintiff is entitled to determine the value of his interest in JCD or what course of action he should take with respect to his membership interest in JCD.

87.    Without the foregoing information, Plaintiff cannot determine whether he may have additional claims against DeNiro. Such claims could also affect the value of Mathieson's interest in JCD.

88.    Upon information and belief, DeNiro has: (i) engaged in self-dealing; (ii) improperly taken steps to expel Mathieson as a member of JCD; (iii) made efforts to unilaterally sell all or substantially all of the assets of JCD without Mathieson's permission or consent; (iv) withheld wages and commissions from Mathieson; (v) refused to pay Mathieson for his membership interest in JCD; and (vi) otherwise engaged in wrongful and actionable conduct with respect to the management of JCD.

89.    Under all of the facts and circumstances, it is just and reasonable that Mathieson have a formal accounting of JCD's affairs.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.    A formal accounting of the affairs of JCD;

b.    Attorney's fees;

c.    costs of suit; and

d.    Such other relief as the Court deems equitable and just.

## FIFTH CAUSE OF ACTION
### (Conversion and Constructive Trust)

90.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

91.    Mathieson and DeNiro are both members of JCD.

92.     DeNiro is the purported majority member of JCD.

93.     DeNiro has purportedly expelled Mathieson as a member of JCD.

94.     In the event that DeNiro's expulsion of Mathieson is deemed proper, Mathieson is entitled to have his interest in JCD purchased in accordance with the terms of the Operating Agreement.

95.     DeNiro has refused to pay Mathieson for his membership interest in JCD.

96.     DeNiro has also refused to pay Mathieson for wages and commission earned by Mathieson.

97.     Retention of the monies owed to Mathieson by DeNiro referred to herein constitutes a benefit to DeNiro to which he is not entitled in law or in equity.

98.     Mathieson has no adequate remedy at law.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.      A temporary and preliminary injunction enjoining Defendant from using, transferring, hypothecating, or otherwise disposing of any or all of JCD's assets subject to the constructive trust;

b.      Attorney's fees;

c.      Costs of suit; and

d.      Such other relief as the Court deems equitable and just.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

99.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

100.    As previously described, DeNiro has wrongfully retained monies that belong to Mathieson.

101.    As a direct and proximate result of DeNiro's wrongful conduct, DeNiro has been unjustly enriched.

102.    As a direct and proximate result of DeNiro's wrongful conduct, Mathieson has suffered and will continue to suffer substantial damages.

103.    Mathieson has no adequate remedy at law.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.    Compensatory damages;

b.    Interest;

c.    Costs of suit;

d.    Attorney's fees; and

e.    Such other relief that the Court deems equitable and just.

**SEVENTH CAUSE OF ACTION**
**(Injunctive Relief)**

104.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth at length herein.

105.    As a member of JCD, DeNiro has a fiduciary duty to conduct the affairs of JCD according to principals of good faith and utmost fidelity.

106.    DeNiro owes a fiduciary duty to Mathieson.

107.    DeNiro has breached the aforesaid obligations by, *inter alia*: (i) engaging in self-dealing, (ii) improperly taking steps to expel Mathieson as a member of JCD; (iii) making efforts to unilaterally sell all or substantially all of the assets of JCD without Mathieson's permission or consent; (iv) withholding wages and commissions from Mathieson; (v) refusing to pay Mathieson for his membership interest in JCD; and (vi) otherwise engaging in wrongful and actionable conduct with respect to the management of JCD.

108.   Mathieson has suffered special injury as a result of DeNiro's habitual misconduct as a member of JCD, by *inter alia*: (i) preventing Mathieson from participating in the management and conduct of JCD's business; (ii) conducting business using Mathieson's name and accounts even after purportedly expelling Mathieson as a member of JCD; (iii) diminishing the value of Mathieson's membership interest in JCD and frustrating Mathieson's reasonable expectation of fully participating in the management of JCD and his efforts to access the company's books and records; and (iv) attempting to sell JCD without the consent of Mathieson.

109.   By virtue of DeNiro's refusal to accept Mathieson's legitimate authority to participate in the management of JCD's affairs, and by virtue of Mathieson's inability to end DeNiro's abuse of his position as a 60% member of JCD, there is the substantial likelihood that, absent the entry of an injunction, DeNiro will continue perpetrate such acts without the consent or authority of Mathieson.

110.   DeNiro's conduct threatens the financial stability of JCD and its continued economic viability.

111.   By virtue of Mathieson's inability to effect the management of JCD and to control DeNiro's abuse of JCD's corporate accounts, there is no adequate remedy at law.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a.   A temporary, preliminary, and permanent injunction enjoining Defendant from refusing Plaintiff access to JCD's books and records;

b.   A temporary, preliminary and permanent injunction enjoining Defendant from terminating Plaintiff as the managing member of JCD;

c.   A temporary, preliminary, and permanent injunction enjoining Defendant from withdrawing any funds from JCD's corporate bank account for personal reasons;

d.     A temporary, preliminary, and permanent injunction enjoining Defendant and/or any agent, servant, employee, or attorney acting on his behalf, from transferring, converting, accessing, and/or withdrawing in full or any portion of JCD's assets;

e.     A temporary, preliminary and permanent injunction enjoining and restraining DeNiro and those persons in active concert or participation with him from withdrawing, disbursing, transferring, pledging, hypothecating or otherwise dissipating or encumbering in any manner all assets maintained by and on behalf of JCD;

f.     A temporary, preliminary and permanent injunction enjoining and restraining DeNiro from issuing any check from any bank account maintained by JCD, unless such check contains the joint signature of Mathieson;

g.     Compensatory damages;

h.     Punitive damages;

i.     Interest;

j.     Cost of suit;

k.     Attorney's fees; and

l.     Such other relief as the Court deems equitable and just.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
*Attorneys for Plaintiff Christopher Mathieson*

By: _____
LINDSEY H. TAYLOR

Dated: October 2, 2007

20

## JURY TRIAL DEMAND

Plaintiff Christopher Mathieson hereby demands a trial by jury as to all issues so triable.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
*Attorneys for Plaintiff Christopher Mathieson*

By: _____
LINDSEY H. TAYLOR

Dated: October 2, 2007

21

## VERIFICATION

CHRISTOPHER MATHIESON, according to law, duly certifies:

1.    I am the plaintiff named in this action and am familiar with the facts underlying this action.

2.    The allegations contained in the Verified Complaint and Jury Trial Demand are true to the best of my knowledge and belief.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
CHRISTOPHER MATHIESON

DATED: October 2, 2007

#3285398v1

# CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN, P.C.

COUNSELLORS AT LAW

5 BECKER FARM ROAD
ROSELAND, N.J. 07068-1739
PHONE (973) 994-1700
FAX (973) 994-1744
www.carellabyrne.com

CHARLES C. CARELLA
BRENDAN T. BYRNE
JOHN N. BAIN
JOHN G. GILFILLAN, III
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT, II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD, III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN

RICHARD K. MATANLE. II
DONALD B. BROOKS
FRANCIS C. HAND
AVRAM S. EULE
LINDSEY H. TAYLOR
RAYMOND W. FISHER
DAVID J. REICH
DECANDA M. FAULK
OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT*
LAURA S. MUNZER
MARC O. MICELI
RAYMOND E. STAUFFER°
JACOB A. KUBERT
STANLEY J. YELLIN
FRANK J. CHESKY III
STEPHEN R. DANEK
DANIEL J. MULLIGAN
°MEMBER N.Y. BAR ONLY

JAMES D. CECCHI (1933-1995)

October 2, 2007

## VIA HAND DELIVERY

J. Michael McMahon, Clerk
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re: *Mathieson v. DeNiro*
       **Our File No. 437005.1**

Dear Mr. McMahon:

  We represent plaintiff Christopher Mathieson in the above-referenced matter. Please find enclosed for filing an original and two (2) copies each of the following pleadings in support of Plaintiff's application for an Order to Show Cause for a preliminary injunction: Verified Complaint and Jury Trial Demand, Declaration of Christopher Mathieson, Brief, and proposed Order to Show Cause. Also enclosed is our Civil Cover Sheet, Summons, and our check in the amount of $350.00 for the filing fee. Kindly return stamped "filed" copies of the pleadings to us.

  Once the Complaint has been filed and a judge assigned, we request that we be allowed to present the proposed Order to Show Cause and supporting papers to the Court for consideration of the relief sought therein.

  Thank you for your attention to this matter.

      Very truly yours,

      CARELLA, BYRNE, BAIN, GILFILLAN,
      CECCHI, STEWART & OLSTEIN

      LINDSEY H. TAYLOR

LHT:ks
Enclosures
#328684v1