# EXHIBIT R



R E A L   E S T A T E   I N T E R N A T I O N A L



# EXCLUSIVE SALES AND MARKETING AGREEMENT
## 123 Baxter Street

### New York, NEW YORK

AGREEMENT, made as of the 14day of February, 2007 between Baxter Street Development Company LLC, having an office at 123 Baxter Street, New York, New York ("Owner") and JC DeNiro & Associates/Christopher Mathieson ("Broker"), having his principal office at 174 Ninth Avenue, New York, New York 10011.

WHEREAS, Owner is the owner of a building located at 123 Baxter Street, New York, New York ("Building"), which Owner is developing as a condominium project (the "Project") and is offering the residential condominium units (each, a "Unit" and collectively, "Units") for sale to third parties ("Purchasers") in accordance with the condominium offering plan (as amended from time to time, the "Plan") for 123 Baxter Street, to be filed with the Department of Law of the State of New York (the "Department of Law"); and

WHEREAS, Owner has determined that it is in its best interests that JC DeNiro/Christopher Mathieson be granted an exclusive right to market and sell the Units, and that JC DeNiro/Christopher Mathieson be engaged for the purpose of providing various sales, marketing, consultation and related services with respect to the Units, and JC DeNiro/Christopher Mathieson desires to accept such engagement, subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

1.    Employment. Owner hereby retains JC DeNiro/Christopher Mathieson as the exclusive sales and marketing agent for the Project, with the exclusive right to sell the Units on the terms and conditions set forth herein. Throughout the term of this Agreement, Owner shall refer to JC DeNiro/Christopher Mathieson all inquiries or offerings received by Owner in connection with the purchase of any Unit.

2.    Scope of Services. JC DeNiro/Christopher Mathieson shall provide the following services, all of which shall be subject to Owner's approval and performed in accordance with applicable law:

# JC DeNiro *& Associates*

REAL ESTATE INTERNATIONAL

(a) Marketing

(i)    Prepare an analysis of comparable sales in the vicinity of the Project.

(ii)    Establish, with Owner's review a marketing budget ("Marketing Budget").

(iii)    Assist in the recommendation and selection of all ancillary professionals, as needed, including advertising agency, public relations firm, graphic designer, signage company, etc.

(iv)    Assist in the creation of all sales materials, including brochures, signage, miscellaneous collateral materials, etc.

(v)    Working in concert with advertising agency, develop initial advertising plan, including creative and media.

(b)  Sales

(i)    At the request of Owner, prepare pricing schedules, and assist in the revision from time to time, as may be required, of the pricing schedule for the Units.

(ii)    Provide periodic written status reports which include reports on the status of sales of Units, the prospect traffic visiting the Building and other relevant data.

(iii)    Distribute the Plan, Purchase Agreements, and any relevant mortgage information (if applicable) to potential purchasers and/or their counsel, including follow-through.

(iv)    Coordinate and attend all showings and inspections of the Units throughout sales period, including all pre-closing punch-list walk-throughs.

(v)    Solicit and field all lead calls in a timely and professional manner to best convert interest into sales of the Units.

(vi)    Manage all contact with the co-brokerage community, from distribution of relevant project particulars, fielding phone inquiries, and setting and accommodating extensive showing schedules during the construction process.

(vii)    Attend meetings with Owner and/or its representatives, and participate in presentations to Owner as and when reasonably





# JC DeNiro *& Associates*

R E A L   E S T A T E   I N T E R N A T I O N A L

requested by Owner regarding the status of marketing activities, marketing strategies being employed and other sales and marketing related topics, and participate in similar presentations to Owner's potential lenders and other persons designated by Owner, from time to time.

(viii)    JC DeNiro/Christopher Mathieson will staff on-site sales office.

(viii)    JC DeNiro/Christopher Mathieson will have all on-site visitors sign and fill out waiver acknowledging construction site and hold developer harmless against injury, loss or damage.

b.) ***Mr. Steven McArdle*** will Direct of Sales 123 Baxter being on on-site and will be in charge and directly responsible for the sales at 123 Baxter Street.

3.    Compensation.

(a)    Owner shall pay directly to JC DeNiro/Christopher Mathieson for its services to be rendered (pursuant to this Agreement), an amount (the "Commission") equal to 2% of the Net Purchase Price (as defined below) of each Unit without an a co-broker (as hereinafter defined) being the procuring cause of the sale and 2% of the Net Purchase Price when an co-brokers is part of the procuring cause of the sale. When a co-broker is involved in the sale a 3% commission will be paid to co-broker directly by owner. The term "Net Purchase Price" means the actual purchase price paid by each Purchaser pursuant to an executed and consummated Purchase Agreement, including, without limitation, any amounts which may be allocable to parking spaces, building standard equipment, furnishings, appliances, decorations and the like.  In addition, the Net Purchase Price of any Unit shall be calculated without giving effect to any reduction in the purchase price of such Unit resulting from (i) any construction defect or (ii) the settlement of any dispute with the Purchaser of such Unit that is arrived at after the execution of the applicable Purchase Agreement but on or prior to the closing of title to such Unit.

(b)    All payments to JC DeNiro/Christopher Mathieson  under Paragraph 3(a) shall be deemed earned only "if, as and when" title to the Unit is conveyed to the Purchaser and the purchase price is received by Owner and shall be paid by Owner to JC DeNiro/Christopher Mathieson at the closing of title of each Unit.

(c)    Failure to close title to a Unit pursuant to an executed Purchase Agreement for any reason whatsoever (except if Owner willfully defaults under the terms and provisions of such Purchase Agreement and the closing does not occur as a result of such default, in which case Owner, within 15 days after its receipt of a demand therefore, shall pay JC DeNiro/Christopher Mathieson  the Commission that would have been payable by Owner to JC DeNiro/Christopher Mathieson under



## JC DeNiro *& Associates*

REAL ESTATE INTERNATIONAL

this Agreement if the closing of the sale of such Unit had been consummated in accordance with such Purchase Agreement) shall excuse Owner completely from any liability for payment of any Commission with respect to such Purchase Agreement, except as and to the extent otherwise set forth in this Agreement. Notwithstanding the foregoing or anything in this Agreement to the contrary, if (i) a Purchaser defaults under a Purchase Agreement relating to any Unit and (ii) as a result of such default,

Owner is entitled to retain all or any portion of the down payment made by such Purchaser pursuant to such Purchase Agreement, then JC DeNiro shall be entitled to

     (d)   It is the intention of Owner and JC DeNiro/Christopher Mathieson to utilize the services of co-brokers from time to time, in connection with the sale of the Units. All commissions to co-brokers shall be paid by Owner. Owner shall pay such commissions to co-brokers Brokers at the rate negotiated by JC DeNiro/Christopher Mathieson and approved by Owner in writing.

     (e) Owner shall pay JC DeNiro/Christopher Mathieson Twelve Thousand ($12,000) Dollars per month commencing on the execution of this Agreement and continuing for eight (8) months thereafter, to cover the JC DeNiro/Christopher Mathieson's staffing costs in connection with the sale of the Units located at the Building. Any payments made by the Sponsor to JC DeNiro/Christopher Mathieson's pursuant to this paragraph (e) shall be credited against any payments due under this Section 3 in connection with the thirteenth (13th) sale of a Unit, through the nineteenth (19th) sale of a Unit, which sales have been effectuated as a result of JC DeNiro/Christopher Mathieson's efforts ("Repayment Period"), such repayment to be made in equal payments over the course of the Repayment Period.

     4.    Expenses and Disbursements.

     (a)   123 Baxter Sponsor is responsible for marketing expenses.

     (b)   $12,000 Monthly Staffing to be paid by 123 Baxter Street Sponsors, as provided in Section 3(e) above.

     5.    Reimbursement of Termination Fee.

     (a)   Owner currently has a brokerage agreement (the "Elliman Agreement") with Insignia Douglas Elliman ("Elliman")for the sale of Units at the Building, which, in reliance on JC DeNiro/Christopher Mathieson efforts hereunder, Owner intends to terminate.

     (b)   Upon such termination, pursuant to the terms of the Elliman Agreement, Owner shall remit to Elliman a $100,000.00 termination fee (the "Termination Fee").

     (c)   As consideration for Owner terminating the Elliman Agreement, JC DeNiro/Christopher Mathieson hereby agrees to reimburse to Owner the Termination Fee, in equal payments over the course of the sale of the first twelve (12) Units




174-A Ninth Avenue (@21ˢᵗ Street)         REBNY         Ph: 212.229.2722

# JC DeNiro & Associates
### REAL ESTATE INTERNATIONAL

effectuated as a result of JC DeNiro/Christopher Mathieson's efforts. Such repayment shall be by credit against any payments to be made by Owner to JC DeNiro/Christopher Mathieson under Section 3 hereunder.

6.    Term.

(a)    The term of this Agreement shall commence from February 14, 2006 and will continue in effect for 24 months. Owner shall have right to terminate agreement if less then 4 units are sold with in the first 6 months of agreement, if less then 3 additional units are sold in the following 6 months and if the last units is not sold with in the following 6 months. All units sold will still be covered in the commission structure of this agreement should termination occur.

7.    Indemnification.

(a)    Owner agrees to defend, indemnify and hold JC DeNiro/Christopher Mathieson  harmless from and against any and all liabilities, losses, claims, suits, damages, penalties, fees, costs and expenses (including, without limitation, reasonable attorneys' fees) (collectively, "Claims") which may be imposed upon, incurred by or asserted against JC DeNiro/Christopher Mathieson by any third person or party, arising from, through, under, out of or in connection with (i) JC DeNiro/Christopher Mathieson  acting as sales agent and marketing consultant and otherwise performing its duties hereunder or as otherwise requested by Owner except for Claims arising from JC DeNiro's/Christopher Mathieson negligence or material breach under this Agreement; and (ii) any and all other claims, assertions, causes of action, and/or suits which arise directly or indirectly out of any event or feature concerning the Building or the Sales Office ("JC DeNiro/Christopher Mathieson Indemnified Losses").

(b)    JC DeNiro/Christopher Mathieson agrees to defend, indemnify and hold Owner harmless from and against any and all Claims which may be imposed upon or incurred by or asserted against Owner by any third party or person arising from, through, under, out of, in connection with or as a result of any statements or representations (oral or written) made by JC DeNiro/Christopher Mathieson or any of its employees or independent contractors which are unauthorized or untrue; ("Owner's Indemnified Losses"); provided, however, that the foregoing indemnity shall not extend to, and JC DeNiro/Christopher Mathieson shall have no liability to Owner for, any information, statement, representation or warranty, whether written or oral, furnished or made by Owner or any employee, representative or agent of Owner (other than JC DeNiro and members of the Administrative Personnel or Sales Staff under the supervision of JC DeNiro).



(c)    The indemnification provisions of this Paragraph 6 shall survive the expiration or earlier termination of this Agreement.

174-A Ninth Avenue (@21ˢᵗ Street)       REBNY       Ph: 212.229.2722

**JC DeNiro** *& Associates*

REAL   ESTATE   INTERNATIONAL

8.    Sales Literature and Advertisements.

        (a)    JC DeNiro/Christopher Mathieson  shall not produce, prepare, issue, use, publish, advertise or furnish any literature, news releases, advertisements, instruments, forms or other written or electronic material of any kind whatsoever (collectively, "Sales Material") nor shall it make any public announcements with respect to the Project without first obtaining the approval of Owner in each instance, which approval shall be granted or denied within 3 business days after Owner's receipt of a request therefore. JC DeNiro/Christopher Mathieson shall be responsible for supervising and overseeing the preparation, purchase, design, production and use by its staff of all Sales Material. JC DeNiro/Christopher Mathieson shall supervise and oversee the preparation and use of any Sales Material which Owner requests to be prepared or used. All Owner approved costs incurred in connection with the Sales Material shall be borne by Owner.

        (b)    Owner shall not release or publish any sales material (including, without limitation, brochures, advertisements and site sign), bearing the name of JC DeNiro/Christopher Mathieson  without the prior approval, which approval shall be granted or denied within 3 business days after JC DeNiro's/Christopher Mathieson receipt of request therefore.

        (c)    Subject to Paragraph  8(b), Owner shall include the name of JC DeNiro/Christopher Mathieson, as exclusive sales and marketing agent, on appropriate signage and in sales, marketing and advertising material in respect of this project.

        9.    Broker's License. JC DeNiro/Christopher Mathieson represents and warrants that it is duly licensed under the State of New York as (a) a real estate broker and (b) a broker-dealer authorized by the State of New York to sell condominium and cooperative units. (Christopher Mathieson, JC DeNiro & Associates: Unique ID # 49MA0966389, New York State).

        10.    Insurance. Owner will cause JC DeNiro/Christopher Mathieson (without any cost to JC DeNiro/Christopher), to be named as an additional insured in its commercial general liability and property damage insurance policies, which insurance will cover all claims for bodily injury, death and property damage incurring upon, in or about the Building, including the elevators therein and the adjoining areas, streets and passageways and will deliver to JC DeNiro/Christopher Mathieson a certificate evidencing such coverage and the insurer's agreement not to cancel or materially and adversely change such insurance coverage without given thirty (30) days' prior notice thereof to JC DeNiro/Christopher Mathieson .

        11.    Governing Law. This Agreement shall be deemed to have been made under and be construed in accordance with the laws of the State of New York.





# JC DeNiro & Associates

## REAL ESTATE INTERNATIONAL

12.    Entire Agreement. All prior understandings and agreements among the parties relative hereto are superseded by this Agreement which is the entire and only agreement between the parties as to the subject matter hereof. This Agreement may not be altered, modified, amended, changed or cancelled or any provision waived or abrogated except by an instrument in writing duly executed by both parties hereto.

13.    Successor and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns and legal representatives. Without limiting the generality of the foregoing, this Agreement shall be binding on any person or entity that succeeds owner as "Sponsor" under the Plan.

14.    Headings. The headings and captions of various sections of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

15.    Corporate/Limited Liability Entity. None of the officers, directors, shareholders, partners, principals, members, managers or employees of either party hereto shall have any personal liability for any obligation of such party hereunder, and neither party hereto shall take any action against any of same or the principals of the other party hereto, whether disclosed or undisclosed, and shall look solely to the assets of the other party hereto for the satisfaction of any obligations hereunder.

16.    Relationship of Parties. The parties acknowledge and agree that JC DeNiro shall act solely as a self-employed independent contractor and shall in no way be considered an agent, partner, co-venturer or officer of Owner.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as the day and year first above written. *TUESDAY* Ⓒ

*JC DENIRO TEAM SHALL TAKE OVER ~~Monday~~ FEB. 20, 2007.* Ⓒ

Date:    February 14, 2007

Baxter Street Development Company LLC

By: _____

Mr. Perry Finkelman

*As Agent*

JC DeNiro & Associates

By: _____

Mr. Christopher Mathieson
Managing Partner - Broker

F:\Finkelman\Baxter\Agmnts\Listing Agreement Development123Baxterdr2.Doc

174-A Ninth Avenue (@21ˢᵗ Street)    REBNY    Ph: 212.229.2722



REAL ESTATE INTERNATIONAL

## The Baxter Breakdown

Commission for project:            $1,000,000 (2% of $50,000 sell out)

Monthly Pass:                      -$96,000 (8 month taken out of back end $12K/mo)
Elliman Brokerage Buy out: -$100K
Part Time Receptionist:            -$25K
Hunie Kwon                         -$45K
Nikki Martin                       -$125K
JC DeNiro:                         -$50K

Sub-total expenses                 (-$441K)

M&M:                               $559K

    CJM                    $279K
    SM                     $447K        ($279K + 120K/yr paid by CJM
                                                  + 6K/mo of pass thru)

Mr. Stephen McArdle is to perform any and all duties set forth in listing agreement with
the sponsor Baxter Street Development Company dated February 14th 2007 in order for
compensation to be effective.

It is understood these number are projections and a good faith estimate. Further more
concrete number to follow.

February 15, 2007

_____            _____
Mr. Stephen McArdle                  Mr. Christopher Mathieson

174-A Ninth Avenue (@21ⁿ Street)          REBNY          Ph: 212.229.2722
New York, NY 10011                        jcdeniro.com          Fax: 212.229.1560