## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER MATHIESON,

        Plaintiff,

    -against-

JOHN C. DENIRO,

        Defendant.

_____/

DOCKET NO.
**1:07-cv-08527-LAK**

---

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

---

ROBERT S. FRANKLIN, P.A.
Attorneys for Defendant JOHN C. DENIRO
823 North Olive Avenue
West Palm Beach, FL 33401
561-805-7140

On the Brief

    ROBERT S. FRANKLIN, ESQ.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................ii

PRELIMINARY STATEMENT..........................................................................1

STATEMENT OF FACTS.................................................................................3

LEGAL ARGUMENT........................................................................................13

     MATHIESON HAS NO RIGHTS AS A MEMBER OF THE
     COMPANY EXCEPT TO HAVE HIS INTEREST PURCHASED
     IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT..................13

     THERE IS OVERWHELMING EVIDENCE THAT MATHIESON
     WAS GUILTY OF WRONGFUL CONDUCT AND, THEREFORE,
     WAS NOT WRONGFULLY EXPELLED.............................................................14

     MATHIESON HAS NOT DEMONSTRATED, AND CANNOT
     DEMONSTRATE IRREPARABLE HARM.........................................................16

     MATHIESON HAS NOT DEMONSTRATED A LIKELIHOOD
     OF SUCCESS ON THE MERITS.........................................................................17

     THE EVIDENCE INDICATES BEFORE THE COURT ON THIS
     MOTION INDICATES THAT DENIRO AND DENIRO &
     ASSOCIATES, LLC WILL SUFFER IRREPARABLE HARM IF
     MATHIESON IS GRANTED THE RELIEF HE REQUESTS...........................18

CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

*Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC,* 2007 WL 2386457
(Sup.Ct. Suffolk Co. July 18, 2007)......................................................................19

*MONY Group, Inc. v. Highfield's* Capital Mgmt., L.P., 368 F.3d 138,143
(2d Cir. 2004)................................................................................................16, 18

## PRELIMINARY STATEMENT

This Brief is submitted in opposition to the application by Plaintiff, CHRISTOPHER MATHIESON ("MATHIESON"), for a preliminary injunction prohibiting the Defendant, JOHN C. DENIRO ("DENIRO"), from taking actions with regard to the company, J.C. DeNiro& Associates, LLC ("DeNiro & Associates, LLC"), and restoring MATHIESON as a member.

In this Brief we will explain to the Court why MATHIESON is not entitled to any relief, either by preliminary injunction or final judgment, because there is a detailed and explicit Agreement, *which both parties acknowledge as binding upon them,* which spells out the rights and duties of the members upon the vote of the majority membership to expel one member. Under the specific terms of the Agreement, MATHIESON is no longer a member, and has no rights as a member other than to be paid for his interest after setoffs. The Agreement provides a lengthy and detailed process for determining the purchase price, a process which has just begun. The Agreement also specifically provides a period of 120 days after the remaining member notifies the expelled member of his election to continue the company and cause the company to purchase his interest must pass before court intervention is sought. Notice of the election was provided by DENIRO to MATHIESON on October 11, 2007, thus, no judicial relief is necessary nor appropriate under the Agreement, as the remedies under the Agreement will not have been exhausted until some time after February 8, 2008, if at all.

The evidence which DENIRO will present to the Court indicates MATHIESON is guilty of wrongful conduct in many ways which not only justified his expulsion from the company, but demonstrate that if this Court were to grant the temporary relief requested by MATHIESON, it is the company, DeNiro & Associates, LLC, that would suffer material and irreparable harm.

## STATEMENT OF FACTS

CHRISTOPHER MATHIESON (hereinafter "MATHIESON") has founded his claims in this case solely upon his own self-serving declaration, without attaching a shred of corroborating evidence to support his claims.

MATHIESON's sworn statement contains many inaccuracies, omissions, incomplete statements and outright falsehoods. MATHIESON has created a false and misleading picture of the operation of J.C. DENIRO & ASSOCIATES, LLC (hereinafter "DeNiro & Associates, LLC"), and MATHIESON's conduct and role therein.

In the Summer of 2002, MATHIESON met with DENIRO in Florida to discuss the formation of a real estate company to do business in New York City. DENIRO knew MATHIESON, as he had worked for DENIRO previously in 2000, as an assistant in a company DENIRO owned, "J.C. DeNiro International Real Estate, Inc." MATHIESON had worked for a short time before quitting.

The essential elements of the agreement to form DeNiro & Associates, LLC., this company, were that DENIRO would be the majority owner with 60% ownership interest and MATHIESON would have a minority interest of 40%. The company would trade on DENIRO's good name and reputation, hence the company was named "J.C. DeNiro & Associates, LLC." Besides using DENIRO's name for the company, DENIRO was making an initial capital contribution of $10,000. MATHIESON was making no cash contribution, but would provide "future services" to the company. MATHIESON agreed to devote his full time and attention to the business, not to compete with the business, and while a member of the company and for two

-3-

years after he leaves the company. He also agreed for a twenty year period afterward he could

not use the name "DeNiro" or a similar name in the real estate business.

An Operating Agreement for the company, Exhibit "A", which embodied the aforesaid

elements was drafted by Lorenzo & Pike, LLP, specifically Mr. Lorenzo.

The final paragraph of the agreement, entitled, "11.12 Legal Counsel" specifically sets

forth the relationship of Lorenzo & Pike, LLP to the parties. As is stated in that paragraph, Mr.

Lorenzo told both MATHIESON and DENIRO to seek their own lawyers before signing the

papers. It also acknowledged that neither DENIRO nor MATHIESON had relied upon any

advice rendered by Mr. Lorenzo.

> **11.12 Legal Counsel.** This Agreement has been prepared by the
> law offices of Lorenzo & Pike, LLP as counsel for the Company.
> Each party hereby agrees and understands that the agreement has
> drafted to reflect the request of all Members which have been
> submitted to counsel. However, by his execution of this
> Agreement each Member acknowledges and agrees that Lorenzo &
> Pike, LLP represents only the Company and does not represent any
> one or more of the Members in connection with the execution of
> this Agreement. *Each Member further acknowledges that they
> have been advised to seek independent counsel in connection
> with the execution of this Agreement and that each Member has
> refused to seek independent counsel. Each Member agrees that
> he has not relied upon any advise rendered by Lorenzo & Pike
> LLP or any of its attorneys in connection with the execution of
> this Agreement.* Mathieson understands and agrees that outside of
> the preparation and execution of this Agreement, Lorenzo & Pike,
> LLP has represented and continues to represent DeNiro in various
> matters. By their execution of this Agreement, Mathieson and
> DeNiro agree to such continued representation and acknowledge
> that *such representation does not constitute a conflict of interest
> or hereby waive such conflict, if any.* (Emphasis added)

MATHIESON claims that Lorenzo told him he was representing MATHIESON is totally

false and refuted by the express terms of the Agreement.

-4-

In the early years, DENIRO came to New York from his home in Florida on a regular basis to help get the business on its feet. MATHIESON and DENIRO consulted on the hiring of personnel, their training and the direction of the company. MATHIESON was in regular telephone contact with DENIRO at least once or twice weekly when he was not in New York.

Thereafter, the company grew and opened additional offices within New York City. During the opening of each office, DENIRO was involved and made frequent trips to New York. The books and records of DeNiro & Associates, LLC, including the banking records were maintained in the main office where MATHIESON was based. DENIRO agrees that MATHIESON was in charge of the day to day operation of DeNiro & Associates, LLC. This included the responsibility to manage the company bank account, pay bills, maintain insurance, as well as pay appropriate state and federal taxes.

When MATHIESON spoke to DENIRO about the condition of DeNiro & Associates, LLC, he always reported that it was doing well; he painted a positive outlook.

In February, 2007 the bookkeeper who had worked for DeNiro & Associates, LLC for 3 years quit unexpectedly. She called DENIRO and he asked why she was leaving; she was adamant that she could not continue to work with MATHIESON, and that DENIRO should get a copy of the company bank records from him. DENIRO requested from MATHIESON these bank records and after several requests received only "Quickbooks" electronic data records beginning with the year 2006.

DENIRO then began to learn of the mismanagement and misappropriation of company funds by MATHIESON. Further exploring the records at the office under MATHIESON's control revealed: a) there were nearly $7,000.00 in bank charges for checks presented on the

account for which there were insufficient funds resulting in "NSF" charges; b) communications from the Internal Revenue Service of unpaid taxes, missing reports, and penalties of $1,000.00 per month assessed for the years 2004, 2005 and 2006 and a "Final Notice of Intent To Levy for over $6,000.00; c) New York City taxes were not paid; there was a Notice of Tax Due showing unpaid taxes and penalties of $10,485.79 for 2005; d) Workers Compensation Insurance had not been paid; the amount owed, with penalties totaled $10,750.00; e) the "Errors and Omissions" liability policy had expired in 2004; f) there were unpaid bills from the company photographer, Digital Destinations, of $10,801.00; g) the alarm service company Slomin's was owed money from March 2006; h) the exterminator was owed a total of $2,813.40, DeNiro & Associates, LLC, had been in arrears since October 2006; I) the architect Gregory Zack was owed $5,191.00; j) MATHIESON had failed to pay the Miller Advertising Agency since November 2005, the total indebtedness was $11,601.80; k) MATHIESON had failed to pay Quinn & Co., the company's public relations firm, a total of $13,075.28 requiring them to threaten legal action against the company; l) the office supply company, Staples, had an outstanding bill of $5,864.58, there was correspondence from a collection agency representing them; m) a collection notice was received on March 16, 2007, from an agency representing Quill Corporation, an office supplier for $4,811.48, that communication indicated that the account might be forwarded to Dun & Bradstreet credit database, thereby damaging DeNiro & Associates, LLC's credit rating; n) statements requesting payment for the Pitney Bowes postage meter lease were in arrears in the amount of $791.77, and the accompanying "postage by phone" account was in arrears in the amount of $4,080.60; o) the Dell Computer company was owed $10,517.24 with mounting monthly finance charges.

After learning of these problems, DENIRO removed MATHIESON from the bank accounts and did his best to repair the damage.

Over the course of the spring and summer of 2007 DENIRO began to make payments to the tax authorities, and the various vendors who are owed money, however, the reputation and creditworthiness of DeNiro & Associates, LLC, has clearly been damaged by MATHIESON's failures to manage the company finances responsibly.

MATHIESON's damage to DeNiro & Associates, LLC's reputation took other forms as well. In November 2004, Ms. Michelle Levy Shulz, a licensed real estate sales person employed by the company, filed a Verified Complaint against DeNiro & Associates, LLC, and specifically, MATHIESON, with the City of New York Human Rights Commission alleging sexual harassment, a hostile work environment and improper firing by MATHIESON. The details of the sworn allegations concerning MATHIESON's conduct are disturbing and create serious consequences for the company.

DENIRO also learned in 2007 that MATHIESON was paying himself 100% of the commissions for projects he brought into DeNiro & Associates, LLC - this was never the agreement with DENIRO. The only agreement DENIRO ever made with MATHIESON in this regard was for MATHIESON to receive 80% of the commissions for individual resale contracts and 10% of the commissions from condo/conversion on business he brought in.

Not only had MATHIESON mismanaged the company finances, DENIRO also uncovered evidence of flagrant violation of the Operating Agreement, specifically paragraph 10.4 "Non-Compete". MATHIESON claimed to have procured several new "exclusive" agreements for projects in 2007 including 123 Baxter Street, 552 West 43rd Street, and 111 Fulton Street,

-7-

which he stated successfully expanded DeNiro & Associates, LLC's business". However, an analysis of these projects evidences a much different picture.

DENIRO was unaware of the specifics of the agreement for "123 Baxter Street" when it was signed by MATHIESON in February, 2007. After obtaining documents, he discovered the beginning of the agreement lists the parties as the building owner and "JC DeNiro & Associates/Christopher Mathieson", which was never agreed to by DENIRO. MATHIESON signed for J.C. DeNiro & Associates. The last page of the agreement, which is titled "The Baxter Breakdown", lists how the One Million Dollar ($1,000,000) commission for the project is to be disbursed. DeNiro & Associates, LLC is to receive $50,000 and then pay it back as expenses, "M&M" is to receive $559,000, "CJM" gets $279,000, and "SM" is to receive $447,000 ($279,000 + $120,000/yr paid by CJM).

The "CJM" referenced in the cash breakdown page refers to MATHIESON, the SM refers to Stephen McArdle. The "M&M" refers to a partnership of MATHIESON and Mr. McArdle formed in March 2007 under the name "MATHIESONMCARDLE LLC." That document shows that MATHIESON was operating his own real estate company in a separate venture with Mr. McArdle. Further, MATHIESON was actually using the offices of J.C. DeNiro & Associates, 174-A Ninth Avenue, New York, New York to blatantly violate the DeNiro & Associates, LLC Operating Agreement, the covenant not to compete, and steal hundreds of thousands in commissions from DeNiro & Associates, LLC.

On September 24, 2007, DENIRO received a letter which is entitled a "30-Day Notice To Cure Default" indicated that MATHIESON had mismanaged a project at 111 Fulton Street as well. The letter states that he violated the "exclusive" sales and marketing agreement by

-8-

engaging in performing services at competing projects at 11 East 36th Street, 123 Baxter Street,

West 43rd Street, and others. The letter also indicates that for "the past 6-7 weeks" beginning in

August 2007, MATHIESON had failed to provide services, attend meetings and other

enumerated derelictions.

On September 18, 2007, DENIRO met in person with MATHIESON in New York and

confronted him with the facts he had discovered. In that conversation, DENIRO advised

MATHIESON that as the majority owner, he had decided to expel MATHIESON from J.C.

DeNiro & Associates, LLC. MATHIESON demanded that DENIRO buy him out. DENIRO

replied to MATHIESON that he would receive no money for his interest until the lawyers and

accountants completely reviewed all of the finances and determined what, if anything, would be

owed to MATHIESON, and advised him to retain counsel.

Paragraphs 8 and 9 of the Sworn Statement of CHRISTOPHER MATHIESON state that

in October of 2002, MATHIESON and DENIRO signed an Operating Agreement, a copy of

which is attached as Exhibit "A" to MATHIESON's Declaration. Paragraph 17 of

MATHIESON's Complaint alleges that that Operating Agreement provided that DENIRO would

have 60% interest in the company and MATHIESON would have 40% and that both parties had

the right to participate in the management and conduct of JCD's business.

DENIRO agrees that the Agreement attached to MATHIESON's Declaration is a true and

correct copy of the Operating Agreement which bears their signatures (other that hand written

comments in the margins), under which DENIRO and MATHIESON formed and operated a

company known as J.C. DENIRO & ASSOCIATES, LLC. DENIRO further acknowledges that

the Agreement provides that his membership interest is equal to 60% of the company and that

-9-

MATHIESON's interest is equal to 40%. It is undisputed that DENIRO has always held a majority of the ownership interest.

Paragraph 7.2 of the Agreement states very clearly and specifically that a member may be expelled from the company by an affirmative vote of the members holding *a majority of the ownership interest.* Accordingly, DENIRO, holding the majority and controlling ownership interest, has a right to expel MATHIESON for conduct listed in the remainder of paragraph 7.2, as follows:

1.    The "expelled Member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of the company" *or*

2.    The "expelled Member has willfully or persistently committed a material breach of the articles of organization of the company or this agreement", *or*

3.    The expelled member "has otherwise breached a duty owed to the company or to the other Members to extent that it is not reasonably practical to carry on the business or affairs of the company with the expelled Member".

Section 7.2 also preserves the right of the company to recover damages from the expelled member and to offset such damages against any amounts which may be otherwise distributable or payable to the expelled member.

There is no requirement in Section 7.2, nor any other part of the Agreement, which requires the expelled member to be notified of his expulsion in any particular manner, nor does it require that a list of wrongful conduct be provided for the expelled member. The only requirement of Section 7.2 is that there be an *"affirmative vote"* of the members holding a *"majority interest",* and that the expelled member has been *"guilty"* of the *"wrongful conduct".*

After expelling a member, the Operating Agreement provides 120 days within which the remaining majority member, DENIRO, can elect whether to continue the company by himself or with others, and cause the company to purchase MATHIESON's interest, or to dissolve the company. On October 11, 2007, DENIRO made his election by sending written notice in accordance with the terms of the Agreement to MATHIESON, indicating that he intended to continue the company, by himself or with others, and to purchase MATHIESON's interest under the terms of the Agreement.

At the present time, the parties are in a 30-day period for them to attempt to agree on the value of the company. That 30 days will expire on November 10, 2007. If an agreement is not reached within 30 days following the election to purchase the interest of the expelled member, the net company value must be determined by a third party appraiser selected by the remaining member, who is "reasonably acceptable" to the expelled member. That begins another time period which ends 120 days from the date of the election to purchase, within which the appraiser is to determine the net value of the company. If the appraisal is not completed within 120 days, then either party may petition the court for the appointment of another appraiser, who shall determine the value which will govern the purchase price. *It is not until 120 days from the date of the election to purchase the expelled member's interest, that either party has the right under the Agreement to seek relief from the courts on the issue of the purchase of an expelled member's interest.*

Once the purchase price has been determined, the company then must pay the expelled member for his interest in sixty equal monthly installments.

-11-

Section 7.7 of the Agreement specifically provides that after an expelled member is notified by the remaining member of his election to cause the company to purchase the expelled member's interest, "the ***disassociating member will have no rights as a member of the company,*** except to have the right of the disassociating member's interest purchased in accordance with the terms of this Agreement."

## LEGAL ARGUMENT

### MATHIESON HAS NO RIGHTS AS A MEMBER OF THE COMPANY EXCEPT TO HAVE HIS INTEREST PURCHASED IN ACCORDANCE WITH THE TERMS OF THE AGREEMENT

Both parties agree that the Operating Agreement governs these rights and duties, and that MATHIESON was expelled by DENIRO on September 18, 2007. Those facts are simply not in dispute. While MATHIESON claims in his papers that DENIRO expelled him without explanation, DENIRO asserts that reasons were given to MATHIESON. MATHIESON also contends that DENIRO threatened not to pay a penny for his membership interest. DENIRO states that MATHIESON has taken that statement out of context; that his complete statement was he would not be paid anything until our lawyers and accountants figure out what, if anything, is owed.

The factual issue of what was said during the expulsion conversation on September 18, 2007, beyond the fact that DENIRO, a majority member, voted to expel MATHIESON, a minority member, is a red herring. The Agreement does not require any particular form of notice to MATHIESON that DENIRO was expelling him, nor does it require DENIRO to hand a laundry list of misconduct to MATHIESON. The Agreement only requires that MATHIESON be *"guilty"* of the misconduct, evidence of which we have supplied in opposition to this Motion, and which DENIRO will be prepared to prove at trial in this cause, after having the opportunity to conduct discovery, should that be necessary.

Nor does the Agreement require that DENIRO, on the spot, offer to purchase MATHIESON's membership interest, or pay him any money. In fact, the Agreement specifically gives DENIRO 120 days, or approximately four months, within which to make that decision.

-13-

DENIRO has already made that decision well within the 120-day period, and provided MATHIESON with the required written notice of his election to continue the company and cause the company to purchase MATHIESON's interest. That notice was given on October 11, 2007, not only in the form required by the Agreement, but was also faxed to MATHIESON's attorney.

As a result of DENIRO's notice of his election to continue the company and cause the company to purchase MATHIESON's interest, under the specific terms of Section 7.7 of the Agreement, ***MATHIESON no longer has any rights as a member of the company, except to have his membership interest purchased,*** a process which has just begun and continues.

Thus, according to the terms of the Agreement, MATHIESON's claim that DENIRO, who is now the only remaining member of J.C. DENIRO & ASSOCIATES, LLC, should be enjoined or restrained from operating the company, using its monies, bank accounts, or selling it, are totally without merit, totally lacking any factual foundation. The Agreement is quite specific that the purchase price for MATHIESON's interest is calculated as of the date of his disassociation, which is the date of his expulsion, September 18, 2007. Thus, the value of the company will be determined as of that date, and its operation or value after that date is of no concern of MATHIESON.

### THERE IS OVERWHELMING EVIDENCE THAT MATHIESON WAS GUILTY OF WRONGFUL CONDUCT AND, THEREFORE, WAS NOT WRONGFULLY EXPELLED

Although MATHIESON concludes in his Declaration that he was "wrongfully expelled", he has reached that conclusion on his own self-serving declaration, without advising the Court of the facts which clearly establish wrongful conduct described as in the three categories listed in

-14-

Section 7.2. The Declaration of DENIRO provides a lengthy list of the facts known to him at this time, with supporting exhibits, demonstrating many instances of wrongful conduct, many of which by themselves would alone be sufficient to expel MATHIESON.

Section 7.2 describes three types of wrongful conduct which will give a basis for expulsion:

1.    "Conduct that adversely materially affects the business of the company".

MATHIESON has failed to pay taxes, failed to maintain insurance, failed to pay essential vendors. He has created unacceptable work environment, causing valued employees to quit, and in one known instance, file sexual harassment claims against him personally. This conduct clearly and materially has negatively affected the business of the company and its reputation.

2.    "Conduct of the expelled member which is willfully and persistently in material breach of the articles of incorporation or the Operating Agreement."

MATHIESON has clearly and blatantly violated the covenant not to compete, and diverted hundreds of thousands of dollars in commissions to himself. MATHIESON has paid himself commissions in excess of what was agreed upon.

3.    "Breach of a duty owed to the company to the extent that it is not reasonably practical to carry on the business affairs of the company with the expelled member."

MATHIESON has misappropriated funds from the company by paying excessive commissions to himself, squandering company assets, failing to pay company bills, resulting in many fines, penalties, and unnecessary charges. MATHIESON has demonstrated his incompetence, dishonesty and lack of trustworthiness, such that it is impossible to allow him to continue in the company.

-15-

The evidence of the substantial, multiple and egregious instances of wrongful conduct by MATHIESON, many of which alone would support and give DENIRO the right to expel him from the company, greatly outweighs the self-serving, unsupported declaration of MATHIESON. The evidence before this Court cannot support granting the temporary relief MATHIESON requests, nor a finding that MATHIESON was wrongfully expelled. At the very least, temporary relief should be denied until DENIRO has the opportunity to take further discovery and present all the evidence.

## MATHIESON HAS NOT DEMONSTRATED, AND CANNOT DEMONSTRATE IRREPARABLE HARM

On pages 11 and 12 of his Brief, MATHIESON concedes that once DENIRO elects to continue the company and cause the company to purchase MATHIESON's interest, he ceases to be a member and has no further rights to participate in the operation of the business and make decisions. Although DENIRO had the period of 120 days from the expulsion in order to make that decision, he has made that decision on October 11, 2007 and served the appropriate notice. MATHIESON's claim of irreparable harm is entirely founded upon the assumption that he has a right to participate in the operation of the company. The concessions in his Brief, establish that he can no longer claim that right. Under these circumstances, the key element for granting of temporary relief, irreparable harm, is lacking and cannot be established by the evidence.

MATHIESON has not met the burden required by the case law he has cited, *MONY Group, Inc. v. Highfield's* Capital Mgmt., L.P., 368 F.3d 138,143 (2d Cir. 2004).

## MATHIESON HAS NOT DEMONSTRATED A
## LIKELIHOOD OF SUCCESS ON THE MERITS

MATHIESON bases his claim that he is likely to succeed on the merits on the

*allegations*: 1) that DENIRO wrongfully expelled him without explanation; and 2) that

regardless of whether he was expelled properly, MATHIESON is entitled to paid for his interest,

and until he is paid, that he remains a member of DeNiro & Associates, LLC.

In support of these allegations, MATHIESON has provided absolutely no evidence, other

than his own self-serving affidavit, which has no documentary or corroborative support.

MATHIESON is not likely to prevail on his first allegation that DENIRO wrongfully

expelled him from DeNiro & Associates, LLC without explanation because, based upon the

evidence that we have presented to this Court, MATHIESON was expelled for many instances of

wrongful conduct.  We have, at this time, presented only those instances for which we have clear

and convincing documentary evidence, not other instances of wrongdoing, such as paying

personal expenses from company funds, which is presently still under investigation and analysis.

Furthermore, once DENIRO has the opportunity to conduct full discovery as permitted by the

Federal Rules of Civil Procedure, it is likely that even more convincing evidence of wrongful

conduct will be exposed and will further support the volume of evidence now before the Court.

To refute this, MATHIESON has produced nothing, nor has he indicated the ability to produce

any evidence.  Accordingly, it is highly unlikely that he will succeed in proving he was

wrongfully expelled.

Regarding his second allegation, that MATHIESON is entitled to be paid for his 40%

interest and that he remains a member until he is paid, MATHIESON cannot prevail because the

-17-

Agreement itself states in paragraph 7.7 that MATHIESON's membership in DeNiro & Associates, LLC ceases upon receipt of the notice that DENIRO intends to pay MATHIESON for his interest in accordance with the Agreement. This notice was served on October 11, 2007, therefore, a 120-day period is presently underway whereby that figure may be determined. Until such time, DENIRO is not obligated to pay MATHIESON anything, nor does MATHIESON have a right as a member. Given these circumstances, it is highly unlikely that MATHIESON will prevail on his claim that he remains a member. Again, MATHIESON has not met the burden of the case law, *MONY Group, Inc., supra*.

### THE EVIDENCE INDICATES BEFORE THE COURT ON THIS MOTION INDICATES THAT DENIRO AND DENIRO & ASSOCIATES, LLC WILL SUFFER IRREPARABLE HARM IF MATHIESON IS GRANTED THE RELIEF HE REQUESTS

As is set forth fully in the Statement of Facts and in the declaration of DENIRO, there is overwhelming evidence of misconduct by MATHIESON which forms not only the basis for his expulsion, but the *need* for his expulsion. It is clear that ignoring company obligations such as taxes, insurance and critical vendors, to the point of incurring penalties and late charges, is detrimental and damaging to the business, as well as profitability of DeNiro & Associates, LLC. MATHIESON has demonstrated that not only does he lack competence to run the business, but his personal conduct and behavior has caused valued and competent employees to leave the company. Furthermore, he has diverted hundreds of thousands of dollars in revenue from the company to himself by violating the Operating Agreement and its covenant not to compete. Under these circumstances, for him to be re-established as a member of the company and given

-18-

the authority to run and operate the company, would bring devastating and catastrophic results. All of these facts are based upon evidence which is before the Court in documentary form, and not simply an unsupported allegation as in the case of MATHIESON's declaration. Simply put, there is no credible evidence before the Court of any need to establish MATHIESON as a member of the company. To the contrary, all of the unbiased evidence indicates to the contrary, that he lacks competence as a member, and brought upon great damage to the company's reputation, as well as its financial profitability. Under the case law argued by MATHIESON, his own conduct, not DENIRO's qualifies as irreparable harm, *Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC,* 2007 WL 2386457 (Sup.Ct. Suffolk Co. July 18, 2007).

## <u>CONCLUSION</u>

For the reasons set forth above, MATHIESON has not satisfied the requirements for the issuance of a preliminary injunction allowing him to remain as a manager of DeNiro & Associates, LLC. He has not demonstrated irreparable harm, nor a likelihood of success on the merits. The evidence before the Court demonstrates to contrary, that irreparable harm will result to DeNiro & Associates, LLC if MATHIESON's Motion were to be granted in any respect.

ROBERT S. FRANKLIN, P.A.
Attorney for Defendant, JOHN C. DENIRO


By:___*/s/ Robert S. Franklin*_____
      ROBERT S. FRANKLIN

Dated: October 12, 2007

-20-

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/  Robert S. Franklin_____
Robert S. Franklin, Esq.
RF-0870
ROBERT S. FRANKLIN, P.A.
823 North Olive Avenue
West Palm Beach, FL 33401
(561) 805-7140
(561) 805-7141 fax

## SERVICE LIST

CHRISTOPHER MATHIESON V. JOHN C. DENIRO
DOCKET NO. 1:07-cv-08527-LAK
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

James Cecchi, Esq.
Counsel for Plaintiff
Carella, Byrne, Bain, Gilfillan,
Cecchi, Stewart & Olstein, PC
5 Becker Farm Road
Roseland, New Jersey  07068-1739