UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MATHIESON,<br><br>               Plaintiff,<br><br>      -against-<br><br>JOHN. C. DENIRO,<br><br>               Defendant. | Docket No. 07 CIV 8527 (LAK/KNF) |

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF
CHRISTOPHER MATHIESON'S APPLICATION FOR AN
ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, New Jersey 07068-1739
(973) 994-1700
*Attorneys for Plaintiff Christopher Mathieson*

Of Counsel:

    JAMES E. CECCHI, ESQ.

On the Brief

    LINDSEY H. TAYLOR, ESQ.
    FRANK J. CHESKY, III, ESQ.

# **TABLE OF CONTENTS**

Table Of Authorities ................................................................................................................ ii

Preliminary Statement............................................................................................................... 1

Legal Argument ........................................................................................................................ 4

      A.      Mathieson Was Improperly Expelled From JCD............................................... 4

      B.      JCD'S Operating Agreement Requires That Mathieson
            Have Access To The Books And Records Of The Company ............................ 6

      C.      DeNiro Must Be Restricted From Selling Or Transferring JCD's Assets
            Until The Purchase Price Of Mathieson's Ownership Interest Is Determined
            And Until Final Adjudication Of Whether DeNiro's Expulsion Of Mathieson
            Was Proper ........................................................................................................ 7

      D.      Mathieson Is Entitled To Expedited Discovery .................................................. 7

Conclusion .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ................ 7
*General Host Corp. v. Triumph Am., Inc.*, 359 F. Supp. 749 (S.D.N.Y. 1973).............................. 8
*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..................... 8
*Gulf & Western Indus., Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 476 F.2d 687 (2d Cir. 1973) ...... 8
*Lentjes Bischoff BmgH v. Joy Environmental Tech., Inc.*, 986 F. Supp. 183 (S.D.N.Y. 1997)...... 8
*MONY Group, Inc. v. Highfield's Capital Mgmt., L.P.*, 368 F.3d 138 (2d Cir. 2004) ................... 5

## PRELIMINARY STATEMENT

Plaintiff Christopher Mathieson ("Mathieson") submits this brief in further support of his application for a preliminary injunction against defendant John C. DeNiro ("DeNiro"). In his opposition, DeNiro obfuscates the primary and critical issue at hand, that Mathieson is entitled to, *inter alia*, the value of his membership interest in JC DeNiro & Associates, LLC ("JCD" or the "Company") and commissions he earned[1]. To determine the amounts he is due, Mathieson must have access to the books and records of JCD, and measures implemented to secure the financial *status quo* of the company until an accounting is performed. In addition, contrary to his assertions, DeNiro was not justified in expelling Mathieson as a member. For the reasons set forth below, none of the examples provided in DeNiro's opposition papers, many of which are either immaterial or wrong, meet the high standard for expulsion as a member of JCD. Accordingly, the Court should grant Mathieson's request for a preliminary injunction.

Mathieson maintains that his expulsion as a member of JCD was illegal and improper. But assuming *arguendo* that DeNiro's actions were proper, his purported election to purchase Mathieson's ownership interest in JCD and to pay him for this interest is governed by the Company's Operating Agreement. To wit, in order to determine the value of Mathieson's ownership interest, DeNiro must allow access to JCD's books and records. DeNiro has not provided this access. In addition, DeNiro has given no assurance that he will not: (i) liquidate, convert, or sell JCD's assets; or (ii) transfer funds from JCD except in the ordinary course of business. DeNiro's refusal to cooperate makes an accounting of JCD's net value impossible and there can be no confidence that JCD will have the financial means to pay the purchase price for

---

[1] Since this action was filed, DeNiro has agreed to pay the wages owed to Mathieson.

Mathieson's ownership interest.[2]  Absent these assurances, the *status quo* of JCD and the value of Mathieson's membership interest in the company are at risk.  Accordingly, the Court should require DeNiro to turn over JCD's books and records, and prevent DeNiro from liquidating, converting, or selling JCD's assets until the Court can further adjudicate this matter.

Rather than address these critical issues, DeNiro erroneously places sole responsibility for the state of JCD's affairs on Mathieson's shoulders and resorts to half-truths, incomplete facts, and malicious character assassination.  DeNiro cannot dispute that he is the majority member of JCD holding a 60% interest in the company and admits that Mathieson kept him apprised of the company's business.  Under JCD's Operating Agreement, and as the majority member, DeNiro had the right, and invariably the duty, to involve himself in the management and control of the business.  Instead, DeNiro chose not to do so.  He contributed little, if any, of his self-professed real estate knowledge and expertise to JCD, contributed nominal start-up capital, and took a mostly hands-off approach to the company that bears his name.  In contrast, Mathieson deferred over $300,000.00 in earned commissions to ensure the financial viability of JCD.  During his tenure, JCD's business thrived with 2007 on track to being its most successful year.

At all times, DeNiro had unfettered access to the company's books and records.  At no time did Mathieson ever deny him access to this information.  In fact, DeNiro was a co-signatory on the Company's bank account, had his own accountant prepare and file JCD's federal and state

---

[2]  As was previously explained, DeNiro's Florida real estate ventures are struggling and he recently transferred $130,000 from JCD to his Florida accounts.  While the monies were returned, the transfer illustrates the risk JCD faces absent the issuance of appropriate protective orders.  Moreover, Mathieson learned that since the filing of this action, DeNiro has transferred all of JCD's bank accounts from HSBC.  There is no legitimate reason to move the Company's bank accounts.

tax returns, had his bookkeeper review JCD's finances, was responsible for procuring and maintaining the "Errors and Omissions" policy on behalf of JCD, and took control of JCD's finances in February 2007. Rather than accept responsibility, DeNiro's conveniently blames Mathieson for the Company's purported ills. If the Company was mismanaged, as DeNiro alleges, he must accept responsibility as the Company's majority member.

Finally, in a desperate attempt to elevate his position, DeNiro introduces a sexual harassment claim by a disgruntled former employee. Knowing the complaint was baseless and adjudicated without a finding of probable cause, DeNiro nevertheless presents this irrelevant information now to sway the Court and to taint Mathieson's good name and reputation. To be clear, the accusation was meritless and certainly does not rise to the level of "guilt" required under the Operating Agreement to justify expulsion of Mathieson as a member of the company.

Even assuming that DeNiro's expulsion of Mathieson and his subsequent election to purchase Mathieson's ownership interest was legal and proper, the Operating Agreement nevertheless requires that the parties agree on the net value of the company to determine the value of Mathieson's ownership interest. DeNiro's refusal to permit access to the company's books and records prevents Mathieson from making this assessment. In addition, DeNiro's refusal to guarantee that he will not liquidate, convert, or sell JCD's assets, provides no assurance to Mathieson that he will receive the value of his ownership interest. Indeed, since this Complaint has been filed, DeNiro has closed JCD's regular company accounts and transferred JDC's monies elsewhere. It is thus imperative that the Court issue a preliminary injunction permitting access to JCD's books and records, and prevent DeNiro from liquidating, converting, or selling JCD's assets. Without this relief, Mathieson will be irreparably harmed.

# LEGAL ARGUMENT

### A.   Mathieson Was Improperly Expelled From JCD

As is set forth more fully in the accompanying Reply Declaration of Christopher Mathieson, Mathieson contests the alleged grounds giving rise to his expulsion from JCD. For example, DeNiro's accountant, not Mathieson, was responsible for ensuring that JCD's taxes were being paid. DeNiro was also responsible for obtaining insurance. DeNiro was as much responsible as Mathieson for ensuring that bills were being paid. In short, DeNiro did not have grounds under the Operating Agreement for expelling Mathieson from the Company. The problems detailed in DeNiro's papers were his own doing, not Mathieson's.

> Paragraph 7.2 of the Operating Agreement provides:
>
> A Member may be expelled from JCD by an affirmative vote of the Members holding a majority of the ownership interests held by Members other than the expelled Member if the expelled Member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of JCD or the expelled Member has willfully or persistently committed a material breach of the articles of organization of JCD or this agreement or has otherwise breached a duty owed to JCD or to the other Members to the extent that it is not reasonably practicable to carry on the business or affairs of JCD with the expelled member.

DeNiro has not met his burden to demonstrate that there was sufficient cause under the Operating Agreement. The financial issues identified DeNiro's papers were primarily his own responsibility. He and/or his accountant were responsible for ensuring that the taxes were being paid. DeNiro was responsible for obtaining and paying for insurance. DeNiro oversaw the finances of the Company. Unfortunately, JCD's bookkeeper, whom both DeNiro and Mathieson agreed to hire, was incompetent, but it appears that the issues which she caused have been resolved. Although the fallout from her failures arguably rest equally on DeNiro and Mathieson, that is no reason to precipitously expel Mathieson from the business he created. The sexual harassment complaint was baseless. Mathieson was not, in fact, diverting business from or

competing with the Company. It is indisputable that, as a member of JCD, DeNiro had the right to participate in the management and conduct of the company. It is also indisputable that, as the majority member of JCD, DeNiro had the right to access the books and records of JCD at any time. To the extent that DeNiro chose not to involve himself in the management of the company it is DeNiro's sole responsibility. At no time did Mathieson refuse access to JCD's books and records.

The bottom line is that the "cause" identified by DeNiro for expelling Mathieson from the Company either doesn't exist, or was just as much DeNiro's responsibility as Mathieson's. DeNiro cannot expel Mathieson from JCD because DeNiro did not fulfill his own responsibilities to the Company. Mathieson built JCD's business and, since his absence, that business deteriorated, as evidenced by the number of recent departures of sales agents. His sales and marketing abilities are essential to the continued operation of the business.

In order to obtain a preliminary injunction, the movant must demonstrate: 1) that it will be irreparably harmed in the absence of an injunction; and 2) either a likelihood of success on the merits or sufficiently serious questions going to the merits of the case to make it a fair ground for litigation and the balance of hardships tipping decidedly in its favor. *MONY Group, Inc. v. Highfield's Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2d Cir. 2004). At worst here, there are "sufficiently serious questions going to the merits of the case to make it fair ground for litigation" with respect to whether Mathieson was properly expelled from the Company. Even if he was properly expelled, it is uncontested that he is entitled to payment for his interest in JCD and any wages and commissions which are due to him. In either case, for the reasons set forth below, he is entitled to access to the Company's books and records and an injunction prohibiting further any dissipation of JCD's assets pending resolution of this matter.

### B.  JCD'S Operating Agreement Requires That Mathieson Have Access To The Books And Records Of The Company

Among the relief sought in the Order to Show Cause is access to the Company's books and records, the ability to review and audit those books and records, and for DeNiro to provide reasonable information regarding and protection to the financial status of JCD.  This is not relief which has been agreed to by DeNiro, nor is it relief which has been mooted by DeNiro's purported election to buy out Mathieson's interest in the Company.

Section 7.5 of the Operating Agreement sets forth the formula for determining the value of the dissociating member's interest in JCD based upon the Company's net value, and further provides that the parties have 30 days in which to reach an agreement on the Company's net value, after which an appraiser must be selected to determine that value.

The Operating Agreement thus requires that the net value of JCD first be determined and that the parties agree on that valuation.  It is elementary that Mathieson cannot agree on the net value of JCD without some basis on which to make that determination.  Only by a reviewing the company's books and records can Mathieson assess the net value of JCD.  DeNiro's refusal to provide this information prevents Mathieson from making this determination and agreeing to a value for his ownership interest in JCD.  Accordingly, the Court should compel DeNiro to permit Mathieson immediate and complete access to JCD's books and records so that Mathieson can perform a complete inspection, review, and audit of such records in order to allow Mathieson a meaningful basis to assess the value of the Company.

6

C.  **DeNiro Must Be Restricted From Selling Or Transferring JCD's Assets Until The Purchase Price Of Mathieson's Ownership Interest Is Determined And Until Final Adjudication Of Whether DeNiro's Expulsion Of Mathieson Was Proper**

Nowhere in DeNiro's opposition papers does DeNiro deny that he is seeking to sell JCD. It also appears that sales people are leaving JCD in droves, which raises serious questions as to whether JCD will continue in business.

Paragraph 7.6 provides that the purchase price for a dissociating member's interest in the Company is to be paid by JCD in 60 equal monthly installments of principal and interest. If, however, DeNiro sells JCD or allows JCD to go out of business, Mathieson's right to receive payments for his interest in JCD over five years is worthless, regardless of the value which the parties may agree upon or is determined by a third-part appraiser. The law is well-settled that a party can suffer irreparable harm where a monetary obligation may be owed by an insolvent. *Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999).

Regardless of the merits of whether Mathieson was properly expelled from JCD, if he was properly expelled, as DeNiro contends, he is entitled to receive payment for his interest in JCD. Mathieson requests that DeNiro be enjoined from taking any steps to sell, liquidate or otherwise dispose of JCD's assets pending final resolution of this matter. Such actions would render JCD insolvent and, thus, as a practical matter, leave Mathieson with no remedy at all. Under Second Circuit law, Mathieson is entitled to protection against DeNiro rendering JCD insolvent by, among other things, transferring monies to his struggling Florida ventures or otherwise disposing of JCD's assets.

D.  **Mathieson Is Entitled To Expedited Discovery**

As demonstrated above, and by the Declarations of Christopher Mathieson, Mathieson's membership interest in JCD and the continued viability of JCD would be irreparably harmed if

7

the Court does not issue an injunction. Further, given the tenor of the allegations made in DeNiro's opposition papers it is certainly appropriate and warranted to order expedited discovery.

Also a critical issue is the amount of money owed by JCD to Mathieson, both in unpaid commissions and his ownership interest, as is the company's financial ability to satisfy its obligation to Mathieson. The debt owed to Mathieson is substantial, in excess of $300,000, in addition to unpaid and upcoming commissions and a share of the company's net value, which by his own admission, DeNiro estimates at approximately $5 million.

To obtain expedited discovery, a court considers the following factors, similar to those required to be met when seeking preliminary injunctive relief:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F.Supp.2d 417, 420 (S.D.N.Y. 1998); *Lentjes Bischoff BmgH v. Joy Environmental Tech., Inc.*, 986 F.Supp. 183, 188 (S.D.N.Y. 1997). Expedited discovery is frequently ordered where a preliminary injunction hearing is to be held within a short period after the commencement of an action. *See, e.g., Gulf & Western Indus., Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 476 F.2d 687, 692 (2d Cir. 1973); *General Host Corp. v. Triumph Am., Inc.*, 359 F.Supp. 749, 751 (S.D.N.Y. 1973). Tested by this standard, Mathieson is entitled to expedited discovery.

For the same reasons that Mathieson will suffer irreparable injury if preliminary injunctive relief is not granted, Mathieson will suffer irreparable injury if expedited discovery is not permitted. Unlike the standard for a preliminary injunction or temporary restraints, the

standard for expedited discovery requires a lesser showing of success on the merits. However, as set forth above, Mathieson has demonstrated more than some probability of success on the merits of his claims against DeNiro.

The purpose of Mathieson's request for expedited discovery is to ascertain the value of his ownership interest in JCD, while at the same time protect the *status quo* and prevent further degradation of JCD's business by DeNiro's actions. It will also allow the parties to discover who was responsible for the financial troubles, if any, as alleged by DeNiro.

By acquiring this information quickly, Mathieson will also ensure that JCD's assets do not disappear during the pendency of the litigation. If DeNiro is prevented from distributing funds to himself during discovery, the *status quo* will have been satisfactorily maintained. However, DeNiro's continued refusal to permit access to JCD's books and records and to consent to maintaining the *status quo* during the litigation evidence that DeNiro has other intentions regarding JCD. IN fact, Mathieson has discovered that DeNiro has already closed JCD's primary bank account.

If expedited discovery is not granted, it is likely that JCD's assets and critical documents will begin to disappear. If in fact funds are being diverted, business being lost, or attempts to sell the business being finalized, documents in DeNiro's possession may simply disappear.

Based upon the foregoing, Mathieson submits that he has demonstrated that expedited discovery is warranted in this case. The taking of early discovery in this case is necessary to more fully develop, for the Court's consideration at the preliminary injunction hearing, a factual record as to the following types of matters, all of which require elucidation by DeNiro: (1) the net value of JCD; (2) the value of Mathieson's interest in JCD; (3) the propriety of DeNiro's purported expulsion of Mathieson; and (4) the current state of affairs at JCD. Such discovery is

relatively limited and will not unduly burden DeNiro. Counsel for Mathieson will, of course, cooperate with counsel for DeNiro to reasonably accommodate the difficulties presented by expedited discovery.

## CONCLUSION

For the reasons set forth above and in the moving papers, Mathieson has satisfied the requirements for the issuance of a preliminary injunction. He has demonstrated irreparable harm, a likelihood of success on the merits, and that the balance of harms weighs in his favor. As a result, Mathieson respectfully requests that the Court issue a preliminary injunction in his favor. In the event that the Court denies Mathieson's request for a preliminary injunction, he respectfully requests that he be granted expedited discovery.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
*Attorneys for Plaintiff Christopher Mathieson*


By:   /s/ James E. Cecchi
         JAMES E. CECCHI

Dated: October 15, 2007