# Exhibit K



REAL ESTATE INTERNATIONAL

## EXCLUSIVE SALES AND MARKETING AGREEMENT
## 11 East 36th Street

### New York, NEW YORK

**AGREEMENT**, made as of the 9th day of October, 2006 between 11 East 36th Street, LLC, having an office at 11 East 36th Street, 10th floor, 10016 ("Owner") and JC DeNiro & Associates ("Broker"), having its principal office at 174 Ninth Avenue (@ 21St Street), New York, New York 10011.

WHEREAS, Owner is the owner of a building located at 11 East 36th Street, New York, New York ("Building"), which Owner is developing as a condominium project (the "Project") and is offering the residential condominium units (each, a "Unit" and collectively, "Units") for sale to third parties ("Purchasers") in accordance with the condominium offering plan (as amended from time to time, the "Plan") for 11 East 36th Street, to be filed with the Department of Law of the State of New York (the "Department of Law"); and

WHEREAS, Owner has determined that it is in its best interests that JC DeNiro be granted an exclusive right to market and sell the Units, and that JC DeNiro be engaged for the purpose of providing various sales, marketing, consultation and related services with respect to the Units, and JC DeNiro desires to accept such engagement, subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

1.      Employment.  Owner hereby retains JC DeNiro as the exclusive sales and marketing agent for the Project, with the exclusive right to sell the Units on the terms and conditions set forth herein.  Throughout the term of this Agreement, Owner shall refer to JC DeNiro all inquiries or offerings received by Owner in connection with the purchase of any Unit.

2.      Scope of Services.  JC DeNiro shall provide the following services, all of which shall be subject to Owner's approval and performed in accordance with applicable law:

174-A Ninth Avenue (@21st Street)
New York, NY 10011

REBNY
jcdeniro.com

Ph: 212.229.2722
Fax: 212.229.1560

# JC DeNiro & Associates

### REAL ESTATE INTERNATIONAL

(a)    Marketing

(i)    Prepare an analysis of comparable sales in the vicinity of the Project.

(ii)    Establish, with Owner's review a marketing budget ("Marketing Budget").

(iii)    Assist in the recommendation and selection of all ancillary professionals, as needed, including advertising agency, public relations firm, graphic designer, signage company, etc.

(iv)    Assist in the creation of all sales materials, including brochures, signage, miscellaneous collateral materials, etc.

(v)    Working in concert with advertising agency, develop initial advertising plan, including creative and media.

(b)    Sales

(i)    At the request of Owner, prepare pricing schedules, and assist in the revision from time to time, as may be required, of the pricing schedule for the Units.

(ii)    Provide periodic written status reports which include reports on the status of sales of Units, the prospect traffic visiting the Building and other relevant data.

(iii)    Distribute the Plan, Purchase Agreements, and any relevant mortgage information (if applicable) to potential purchasers and/or their counsel, including follow-through.

(iv)    Coordinate and attend all showings and inspections of the Units throughout sales period, including all pre-closing punch-list walk-throughs.

(v)    Solicit and field all lead calls in a timely and professional manner to best convert interest into sales of the Units.

(vi)    Manage all contact with the co-brokerage community, from distribution of relevant project particulars, fielding phone inquiries, and setting and accommodating extensive showing schedules during the construction process.

174-A Ninth Avenue (@21ˢᵗ Street)
New York, NY 10011

REBNY
jcdeniro.com

Ph: 212.229.2722
Fax: 212.229.1560



REAL ESTATE INTERNATIONAL

(vii)    Attend meetings with Owner and/or its representatives, and participate in presentations to Owner as and when reasonably requested by Owner regarding the status of marketing activities, marketing strategies being employed and other sales and marketing related topics, and participate in similar presentations to Owner's potential lenders and other persons designated by Owner, from time to time.

3.    <u>Compensation</u>.

(a)    Owner shall pay directly to JC DeNiro for its services to be rendered (pursuant to this Agreement), an amount (the "<u>Commission</u>") equal to 2% of the Net Purchase Price (as defined below) of each Unit without an Outside JC DeNiro Broker (as hereinafter defined) being the procuring cause of the sale and 2% of the Net Purchase Price when an Outside Broker is the procuring cause of the sale.  The term "<u>Net Purchase Price</u>" means the actual purchase price paid by each Purchaser pursuant to an executed and consummated Purchase Agreement, including, without limitation, any amounts which may be allocable to parking spaces, building standard equipment, furnishings, appliances, decorations and the like.  In addition, the Net Purchase Price of any Unit shall be calculated without giving effect to any reduction in the purchase price of such Unit resulting from (i) any construction defect or (ii) the settlement of any dispute with the Purchaser of such Unit that is arrived at after the execution of the applicable Purchase Agreement but on or prior to the closing of title to such Unit. Should JC DeNiro sell 6 or more units by the end of 2006 the commission structure will be increased to 2.5% payable to JC DeNiro on direct and outside broker deals for the remainder of the agreement.

(b)    All payments to JC DeNiro under <u>Paragraph 3(a)</u> shall be deemed earned only "if, as and when" title to the Unit is conveyed to the Purchaser and the purchase price is received by Owner and shall be paid by Owner to JC DeNiro at the closing of title of each Unit.

(c)    Failure to close title to a Unit pursuant to an executed Purchase Agreement for any reason whatsoever (except if Owner willfully defaults under the terms and provisions of such Purchase Agreement and the closing does not occur as a result of such default, in which case Owner, within 15 days after its receipt of a demand therefore, shall pay JC DeNiro the Commission that would have been payable by Owner to JC DeNiro under this Agreement if the closing of the sale of such Unit had been consummated in accordance with such Purchase Agreement) shall excuse Owner completely from any liability for payment of any Commission with respect to such Purchase Agreement, except as and to the extent otherwise set forth in this Agreement. Notwithstanding the foregoing or anything in this Agreement to the contrary, if (i) a Purchaser defaults under a Purchase Agreement relating to any Unit and (ii) as a result of such default, Owner is entitled to retain all or any portion of the down payment made by such Purchaser pursuant to such Purchase Agreement, then JC DeNiro shall be entitled to

174-A Ninth Avenue (@21ˢᵗ Street)
New York, NY 10011

REBNY
jcdeniro.com

Ph: 212.229.2722
Fax: 212.229.1560



REAL ESTATE INTERNATIONAL

a Commission in an amount equal to 2% of the amount that Owner is so entitled to retain, payable by Owner when the proceeds of such down payment are released from escrow.

        (d)    It is the intention of Owner and JC DeNiro to utilize the services of outside brokers (collectively, "Outside Brokers" and individually, an "Outside Broker"), from time to time, in connection with the sale of the Units. All commissions to Outside Brokers shall be paid by Owner. Owner shall pay such commissions to Outside Brokers at the rate negotiated by JC DeNiro and approved by Owner in writing, provided that no such rate shall exceed 3% of the Net Purchase Price for the Unit for which such Outside Broker is the procuring cause of the sale. No Outside Broker may be engaged by JC DeNiro, and the Units shall not be listed for sale with an Outside Broker by JC DeNiro, until such Outside Broker has entered into a written agreement with Owner.

        4.    Expenses and Disbursements.

        (a)    JC DeNiro shall split the first $75,000 (the "Base Expenses") of the costs and expenses incurred relating to the sale of the Units, including all costs incurred by JC DeNiro in the sales, marketing and advertising of the Units, such as printing costs directly related to such sales and marketing activities. Any such costs and expenses shall be subject to Owner's prior approval. Notwithstanding the foregoing, Owner shall provide JC DeNiro, at no cost or expense to JC DeNiro, with such architectural drawings, renderings, logos, floor plans and elevations as JC DeNiro may require for the sales, marketing and advertising of the Units. Invoices will be paid directly by owner and be deducted from JC DeNiro final commissions in the amount not to exceed $37,500.00.

        5.    Term.

        (a)    The term of this Agreement shall commence on the date hereof and shall terminate on the date of the transfer of title to the last Unit. Owner shall have the right to review agreement within the first 120 days and every 90 days thereafter. Should owner desire to terminate agreement for "cause" after the review period owner will provide 14 day written notice of intent to do so.

        (b)    Any termination pursuant to Paragraph 5(a) above shall not relieve either party of their respective obligations arising hereunder prior to the effective date of such termination including, without limitation, the payment of (i) any compensation theretofore due or earned hereunder and thereafter payable including, without limitation, Commissions for Units subject to Purchase Agreements and not yet closed, which Commissions will be payable only if and upon the date that such closing

**JC DeNiro** *& Associates*

REAL ESTATE INTERNATIONAL

occurs, and (ii) any Owner approved expenses theretofore incurred and which Owner is required to pay for pursuant to this Agreement.

        (c)    Within thirty (30) days after any termination of this Agreement, (i) JC DeNiro shall deliver to Owner a list of all pending sales ("Pending Transactions"), which list shall include the names and addresses of the potential purchasers, and (ii) Owner shall pay JC DeNiro the Commission calculated in accordance with the terms of Paragraph 3, for Pending Transactions in respect of which a Purchase Agreement is entered into within six (6) months following the termination of this Agreement.

        6.    <u>Indemnification</u>.

        (a)    Owner agrees to defend, indemnify and hold JC DeNiro harmless from and against any and all liabilities, losses, claims, suits, damages, penalties, fees, costs and expenses (including, without limitation, reasonable attorneys' fees) (collectively, "<u>Claims</u>") which may be imposed upon, incurred by or asserted against JC DeNiro by any third person or party, arising from, through, under, out of or in connection with (i) JC DeNiro acting as sales agent and marketing consultant and otherwise performing its duties hereunder or as otherwise requested by Owner except for Claims arising from JC DeNiro's negligence or material breach under this Agreement; and (ii) any and all other claims, assertions, causes of action, and/or suits which arise directly or indirectly out of any event or feature concerning the Building or the Sales Office ("<u>JC DeNiro Indemnified Losses</u>").

        (b)    JC DeNiro agrees to defend, indemnify and hold Owner harmless from and against any and all Claims which may be imposed upon or incurred by or asserted against Owner by any third party or person arising from, through, under, out of, in connection with or as a result of any statements or representations (oral or written) made by JC DeNiro or any of its employees or independent contractors which are unauthorized or untrue; ("<u>Owner's Indemnified Losses</u>"); provided, however, that the foregoing indemnity shall not extend to, and JC DeNiro shall have no liability to Owner for, any information, statement, representation or warranty, whether written or oral, furnished or made by Owner or any employee, representative or agent of Owner (other than JC DeNiro and members of the Administrative Personnel or Sales Staff under the supervision of JC DeNiro).

        (c)    The indemnification provisions of this Paragraph 6 shall survive the expiration or earlier termination of this Agreement.

        7.    <u>Sales Literature and Advertisements</u>.

174-A Ninth Avenue (@21ˢᵗ Street)
New York, NY 10011

REBNY
jcdeniro.com

Ph: 212.229.2722
Fax: 212.229.1560

## JC DeNiro & Associates

REAL ESTATE INTERNATIONAL

(a)     JC DeNiro shall not produce, prepare, issue, use, publish, advertise or furnish any literature, news releases, advertisements, instruments, forms or other written or electronic material of any kind whatsoever (collectively, "Sales Material") nor shall it make any public announcements with respect to the Project

without first obtaining the approval of Owner in each instance, which approval shall be granted or denied within 24 hours after Owner's receipt of a request therefore. JC DeNiro shall be responsible for supervising and overseeing the preparation, purchase, design, production and use by its staff of all Sales Material. JC DeNiro shall supervise and oversee the preparation and use of any Sales Material which Owner requests to be prepared or used. All Owner approved costs incurred in connection with the Sales Material shall be borne by Owner.

(b)     Owner shall not release or publish any sales material (including, without limitation, brochures, advertisements and site sign), bearing the name of JC DeNiro without the prior approval of JC DeNiro in each instance.

(c)     Subject to Paragraph 7(b), Owner shall include the name of JC DeNiro, as exclusive sales and marketing agent, on appropriate signage and in sales, marketing and advertising material in respect of this project.

8.     Broker's License. JC DeNiro represents and warrants that it is duly licensed under the State of New York as (a) a real estate broker and (b) a broker-dealer authorized by the State of New York to sell condominium and cooperative units. (Christopher Mathieson, JC DeNiro & Associates: Unique ID # 49MA0966389, New York State).

9.     Insurance. Owner will cause JC DeNiro (without any cost to JC DeNiro), to be named as an additional insured in its commercial general liability and property damage insurance policies, which insurance will cover all claims for bodily injury, death and property damage incurring upon, in or about the Building, including the elevators therein and the adjoining areas, streets and passageways and will deliver to JC DeNiro a certificate evidencing such coverage and the insurer's agreement not to cancel or materially and adversely change such insurance coverage without given thirty (30) days' prior notice thereof to JC DeNiro.

10.     Governing Law. This Agreement shall be deemed to have been made under and be construed in accordance with the laws of the State of New York.

11.     Entire Agreement. All prior understandings and agreements among the parties relative hereto are superseded by this Agreement which is the entire and only agreement between the parties as to the subject matter hereof. This Agreement may not be altered, modified, amended, changed or cancelled or any provision waived or abrogated except by an instrument in writing duly executed by both parties hereto.

174-A Ninth Avenue (@21ˢᵗ Street)
New York, NY 10011

REBNY
jcdeniro.com

Ph: 212.229.2722
Fax: 212.229.1560



**REAL ESTATE INTERNATIONAL**

12.    <u>Successor and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns and legal representatives.  Without limiting the generality of the foregoing, this Agreement shall be binding on any person or entity that succeeds owner as "Sponsor" under the Plan.

13.    <u>Headings</u>.  The headings and captions of various sections of this Agreement are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

14.    <u>Corporate/Limited Liability Entity</u>.  None of the officers, directors, shareholders, partners, principals, members, managers or employees of either party hereto shall have any personal liability for any obligation of such party hereunder, and neither party hereto shall take any action against any of same or the principals of the other party hereto, whether disclosed or undisclosed, and shall look solely to the assets of the other party hereto for the satisfaction of any obligations hereunder.

15.    <u>Relationship of Parties</u>.  The parties acknowledge and agree that JC DeNiro shall act solely as a self-employed independent contractor and shall in no way be considered an agent, partner, co-venturer or officer of Owner.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as the day and year first above written.

By: 

_____

Mr. Joe Bobker

_____

Mr. Ben Bobker

JC DeNiro & Associates

By: 

_____

Christopher Mathieson
Managing Partner – Broker



