# Exhibit R



## INDEPENDENT CONTRACTING AGREEMENT

This CONSULTING AGREEMENT ("Agreement") is made as of April 26, 2007 by JC DeNiro & Associates, LLC, a New York Limited Liability Company, having an office address at 34 Eighth Avenue, New York, NY 10014, (the "Company"), and Kristin Kogan having an address at 85 East 10th Street, #D, New York, New York 10003 (the "Independent Contractor").

## W!TNESSETH:

WHEREAS the Company seeks Associate Brokers and or Licensed Sales Persons for the on site sales of individual condominium units of the Sixty Ann Street a.k.a. 111 Fulton Street ("the Property").

WHEREAS Independent Contractor desires to be an on-site Independent Contractor for the sale of individual condominium units of the Property;

WHEREAS, the Company and Independent Contractor seek to set forth their agreement herein;

WHEREAS, the Company desires to retain the Independent Contractor in connection with the sale of individual condominium units and the Independent Contractor desires to perform such services for the Company.

NOW, THEREFORE, in consideration of the mutual covenants and conditions provided herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows:

1. **Independent Contracting Arrangement; Duties and Authority; Definitions.**

1.1. The Company hereby appoints the Independent Contractor to assist the Company in connection with the sale of individual condominium units, and the Consultant hereby accepts such appointment by the Company on the terms, covenants and conditions herein contained.

1.2. During the term of this Agreement, the Consultant shall on a full-time basis faithfully and diligently devote so much of her time, attention, knowledge and skills as the Company shall deem appropriate to perform to the best of her ability, using her best efforts, the duties assigned to her in order to further the business of the Company. In performing her duties hereunder, the Consultant shall observe and carry out such rules, regulations, policies, directions and restrictions as the Company shall from time to time establish. In performance of her duties hereunder, the Independent Contractor shall use her best efforts to comply in each and every respect with the applicable rules and regulations of the Real Estate Board of New York and any and all other applicable laws, regulations and rules applicable to the Company. Independent Contract represents and warrants that she is a duly licensed real estate broker or salesperson in good standing under the laws of the State of New York and shall remain so at all times during the term of this Agreement.

2. **Compensation.**



2.1.  Until termination of the term of this Agreement in accordance with Section 3 below, the Company shall pay to the Independent Contractor an annual contracting fee of $124,800 per annum (the "<u>Contracting Fee</u>"), payable in equal weekly installments of $2,400 and in accordance with such compensation practices as the Company adopts from time to time, with written notice to Independent Contractor of any newly adopted practices. The Independent Contractor shall pay all of her own taxes with respect to any Contracting Fee or other payments made or payable under this Agreement. The Company shall have no obligation to withhold any amounts from any payments made or payable to the Independent Contractor.

2.2.  An additional amount of approximately $100,000.00 (the "Additional Amount") shall be paid upon the actual closing of title to the condominium units, in equal installments of $813.00 per closed unit, for the first 123 units closed, invoiced monthly by Independent Contractor to Company. The Additional Amount shall be payable on or before the fifteenth day of the following month.

2.3.  The Company shall reimburse the Independent Contractor for reasonable out-of-pocket expenses incurred by the Independent Contractor for the benefit of the Company only if, in each instance, the Company's written consent is obtained in advance; <u>provided</u>, <u>however</u>, that before the Company shall make such reimbursements, the Independent Contractor shall present the Company with receipts and other documentation substantiating such out-of-pocket expenses.

3.  **Term and Termination.**

3.1.  This Agreement shall have a term of one (1) year commencing on the date hereof, subject to the terms and conditions set forth below. Thereafter, the term of this Agreement may be further extended, from time to time, at the Company's request, provided that such request for an extension is presented to the Independent Contractor in writing and subsequently agreed to by the Independent Contractor for additional consideration mutually agreed upon.

3.2.  This Agreement shall terminate immediately upon the earlier to occur of (i) the Independent Contractor's death or permanent disability, (ii) written notice by the Company at any time of the Company's election to terminate this Agreement for specific non-performance regarding the required sale of the Property in its sole discretion, effective fifteen (15) days after the date of the notice, (iii) written notice by the Company of a default by the Independent Contractor in any of her obligations hereunder, effective two (2) days after the date of the notice, or (iv) written notice by the Independent Contractor of a default by the Company in any of its obligations hereunder, effective two (2) days after the date of the notice. In either instance defined in subparagraphs (iii) and (iv) above, prior to delivery of written notice of default leading to subsequent termination, the Company or Independent Contractor will specifically define the instance of default and give the defaulting party a reasonable opportunity to cure such default. It is understood that specific non-performance is defined as not having a minimum of twenty-six (26) executed and countersigned contracts within four months and a minimum of sixty-eight (68) executed and countersigned contracts within eight months of the acceptance of the Offering Plan by the Attorney General of the State of New York.

3.3.  In the event of termination of this Agreement pursuant to this Section 3:

3.3.1.  The Independent Contractor shall be entitled to receive (subject to any rights of setoff or counterclaim by the Company) all compensation specified in this Agreement that shall have accrued prior to the date of such termination. The obligation of the Company for the payment of



any further compensation, and the right of the Independent Contractor to receive any further compensation, shall terminate on the date of such termination. Any Contracting Fee or Additional Fee the Company pays to the Independent Contractor for any period after the termination date shall be appropriately apportioned, and Independent Contractor shall promptly return to the Company any overpayment in connection thereto. If Independent Contractor dies prior to the completion of this Agreement, any moneys that may be due Independent Contractor from the Company under this Agreement as of the date of death shall be paid to Independent Contractor's executors, administrators, heirs, personal representatives, successors, and assigns.

4. **Company to Own Rights to Proprietary Products.** The Independent Contractor acknowledges and agrees that all tangible and intangible property (the "Proprietary Products") of or relating to the Company are and shall remain the exclusive and valuable property of the Company, and the Independent Contractor shall neither have nor claim to have any right, title or interest therein or thereto in such capacity. All opportunities relating to the Proprietary Products whether or not involving third parties shall belong to and be carried out for the account of the Company. The Independent Contractor shall from time to time execute and deliver to the Company such instruments of transfer as may be requested by the Company to confirm the Company's exclusive ownership of the Proprietary Products.

5. **Confidentiality.** The Independent Contractor acknowledges and agrees that the success of the Company depends on the innovative Proprietary Products and that it is imperative that all information disclosed, developed or obtained during the term of this Agreement relating to the Propriety Products of the Company (the "Confidential Information") is maintained in strict confidence. Confidential Information is the exclusive and valuable property of the Company. The Independent Contractor shall therefore retain in strict confidence and not copy or disclose or transfer to any third party any Confidential Information.

6. **Documents.** The Independent Contractor agrees that any and all Documents made or kept by her of work performed in the performance of the Independent Contractor's duties hereunder shall be and are the sole and exclusive property of the Company. The Independent Contractor agrees to execute and deliver to the Company any and all agreements or instruments of any nature that the Company deems necessary or appropriate to acquire, enhance, protect, perfect, assign, sell or transfer its rights under this Section. The Independent Contractor also agrees that upon request she will place all Documents in the Company's possession and will not take with her without the written consent of a duly authorized Member of the Company any Documents or reproductions thereof relating or pertaining to or connected with her contracting work or the business of the Company.

7. **Covenant Not to Compete.**

7.1. During the term of this Agreement, the Independent Contractor shall devote her entire time and energy to the furtherance of the Company and shall not in any employment, consulting, advisory, contractor or other capacity work for any individual, firm, corporation or any entity, other than Company, in matters pertaining to the business of Company. The Independent Contractor further acknowledges and agrees that the Proprietary Products are the exclusive and valuable property of the Company and may not be used by the Independent Contractor for any purpose of any kind directly or indirectly except during the term of this Agreement and for the sole and exclusive benefit of the Company in the Independent Contractor's capacity as an Independent Contractor of the Company and that the success of the Company depends on the Independent Contractor's observance of her covenants in this Section 7. Further, the Independent Contractor shall not:



7.2.     Solicit, hire or retain any employee of the Company or persuade or entice any employee of the Company to leave the employ of the Company.

7.3.     Molest or interfere with the goodwill and relationship with any of the customers or subscribers of the Company, including, without limitation, with respect to the Proprietary Products or derivatives thereof or any similar applications or functional equivalents thereof.

7.4.     Persuade, accept, induce or solicit any of the clients, customers, or prospective or former clients, customers, subscribers or accounts of the Company, now existing or hereafter obtained, relating to the Proprietary Products to engage anyone, other than the Company, to provide the Proprietary Products or derivatives or similar applications or functional equivalents thereof (the foregoing to include the affiliates, subsidiaries and successors of such customers, subscribers and accounts).

8.      **Independent Contractor Relationship.**

8.1.     The Independent Contractor shall be acting as an Independent Contractor of the Company. This Agreement does not constitute and shall not be construed as constituting a partnership, joint venture, franchise, license or employment relationship between the parties hereto. Neither party shall have any right or power to obligate or bind, or create any liability or obligation for or in the name of the other party.

8.2.     Except as otherwise specifically provided herein, the Independent Contractor shall pay all of her own expenses in carrying out her responsibilities under this Agreement.

9.      **Representations and Warranties.**

9.1.     The Independent Contractor hereby represents and warrants to the Company that the execution and delivery of this Agreement by her, and the performance of her obligations hereunder, are not in violation of, and do not and will not conflict with or constitute a default under, any of the terms and provisions of any agreement or instrument to which she is bound or any law, regulation, order, decree or judgment to which she is subject; and that this Agreement has been duly executed and delivered by her and is a valid and binding obligation enforceable in accordance with its terms.

9.2.     The Company hereby represents to the Independent Contractor that the execution and delivery of this Agreement by it and the performance of its obligations hereunder are not in violation of and do not conflict with or constitute a default under any of the terms and provisions of any agreement or instrument to which it is bound or any law or regulation, order, decree or judgment to which it is subject and that this Agreement has been duly executed and delivered by it and it is a valid and binding obligation enforceable in accordance with its terms.

10.     **Notices.** All notices, or other communications required or permitted to be given hereunder, shall be in writing and shall be delivered personally or mailed, certified mail, return receipt requested, postage prepaid, to the parties at their addresses set forth above. Copies of all notices to the Company shall be sent to Law Offices of Bryan W. Kishner & Associates, 477 Madison Avenue, 9th Floor, New York, New York 10022, Attention: Bryan W. Kishner, Esq. Any notice mailed in accordance with the terms hereof shall be deemed received on the third day following the date of mailing. Either party may change the address to which notices to such party may be given hereunder by serving a proper notice of such change of address to the other party.



11.     **Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior written or oral negotiations, representations, agreements, commitments, contracts or understandings with respect thereto and no modification, alteration or amendment to this Agreement may be made unless the same shall be in writing and signed by both of the parties hereto.

12.     **Waivers.** No failure by either party to exercise any of such party's rights hereunder or to insist upon strict compliance with respect to any obligation hereunder, and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver by either party to demand exact compliance with the terms hereof. Waiver by either party of any particular default by the other party shall not affect or impair such party's rights in respect to any subsequent default of the same or a different nature, nor shall any delay or omission of either party to exercise any rights arising from any default by the other party affect or impair such party's rights as to such default or any subsequent default.

13.     **Governing Law.** For purposes of construction, interpretation and enforcement, this Agreement shall be deemed to have been entered into under the laws of the State of New York and its validity, effect, performance, interpretation, construction and enforcement shall be governed by and subject to the laws of the State of New York without reference to its choice of law rules.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date first written above.

JC DeNiro & Associates, LLC:

By:_____ Date: April _____, 2007

Christopher Mathieson
Managing Member

<u>Independent Contractor</u>:

By:_____ Date: April _____, 2007

Kristin Kogan