UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER MATHIESON,                                    DOCKET NO.
                                                          1:07-cv-08527-LAK
      Plaintiff/ Respondent on Counterclaim

    -against-

JOHN C. DENIRO,

      Defendant/
      Counterclaimant

_____/

## COUNTERCLAIM

Defendant/Counterclaimant, JOHN C. DENIRO, (hereinafter referred to as "DENIRO"), sues Plaintiff/ Respondent on Counterclaim, CHRISTOPHER MATHIESON (hereinafter referred to as "MATHIESON"), and states:

### ALLEGATIONS AS TO ALL COUNTS

1.    This Court has jurisdiction of this claim pursuant to 28 U.S.C. §1332(a) because it is between citizens of different states and the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2.    DENIRO is a real estate broker who has, for many years, been involved in commercial and residential real estate sales and projects in the States of New Jersey, Florida and New York, and is currently licensed in New York and Florida.

3.    In 2002, MATHIESON met with DENIRO in Florida to discuss the formation of a real estate company to do business in New York City.

4.    On or about October, 2002, the parties executed a written agreement attached as

Exhibit "A". The essential elements of the agreement to form J.C. DENIRO & ASSOCIATES, LLC., (" The Company") were that DENIRO was the majority owner with 60% ownership interest and MATHIESON had a minority interest of 40%. MATHIESON agreed to devote his full time and attention to the business, not to compete with the business, and while a member of the company and for two years after he leaves the company. He also agreed for a twenty year period afterward he could not use the name "DeNiro" or a similar name in the real estate business.

   5. From 2002 to early 2007, MATHIESON was responsible for the management of the office and agents, paying bills, and maintaining the books and records of The Company, including the banking records in the main office where he was based. MATHIESON and DENIRO agreed he was in charge of the day-to-day operation of The Company. This included managing the company bank account, paying bills, maintaining insurance, as well as paying appropriate state and federal taxes.

   6. Between 2002 and early 2007, MATHIESON often reported to DENIRO, and reflected that the financial condition of The Company was headed in a positive direction.

   7. On or about February, 2007, DENIRO began to learn of the mismanagement of company funds by MATHIESON, including but not limited to unpaid Federal income tax, unpaid New York City taxes, unpaid workers compensation insurance premiums, unpaid liability insurance premiums, unpaid bills from the company photographer, the alarm service company, the exterminator, the architect, advertising agency, public relations firm, the office supply company, etc.

   8. On or about February, 2007, DENIRO learned that MATHIESON had also

misappropriated funds by paying personal bills, expenses, personal parking tickets, and excessive commissions to himself from company funds.

9. On or about February, 2007, DENIRO also uncovered evidence of violation of the Operating Agreement, specifically paragraph 10.4 "Non-Compete"; MATHIESON had made deals with other brokers and developers in competition with J.C. DENIRO & ASSOCIATES, LLC.

10. Paragraph 7.2 of the Agreement states very clearly and specifically that a member may be expelled from the company by an affirmative vote of the members holding *a majority of the ownership interest* for conduct listed in the remainder of paragraph 7.2, as follows:

> 1. The "expelled Member has been guilty of wrongful conduct that adversely and materially affects the business or affairs of the company" *or*
>
> 2. The "expelled Member has willfully or persistently committed a material breach of the articles of organization of the company or this agreement", *or*
>
> 3. The expelled member "has otherwise breached a duty owed to the company or to the other Members to extent that it is not reasonably practical to carry on the business or affairs of the company with the expelled Member".

11. On September 18, 2007, DENIRO, as majority owner, voted to expel MATHIESON from the company on the ground that he was guilty of multiple instances of wrongful conduct that adversely and affected the business or affairs of the company, willfully or persistently committed a material breach of the articles of organization of the company or the

agreement, and otherwise breached a duty owed to the company or to the other Members to the extent that it was not reasonably practical to carry on the business or affairs of the company with MATHIESON.

12. Section 7.2 of the Agreement also preserves the right to recover damages from the expelled member and to offset such damages against any amounts which may be otherwise distributable or payable to the expelled member.

13. There is no requirement in Section 7.2, nor any other part of the Agreement, which requires the expelled member to be notified of his expulsion in any particular manner, nor does it require that a list of wrongful conduct be provided for the expelled member. The only requirement of Section 7.2 is that there be an *"affirmative vote"* of the members holding a *"majority interest",* and that the expelled member has been *"guilty"* of the *"wrongful conduct".*

14. After expelling a member, the Operating Agreement provides 120 days within which the remaining majority member, DENIRO, can elect whether to continue the company by himself or with others, and cause the company to purchase MATHIESON's interest, or to dissolve the company. On October 11, 2007, DENIRO made his election by sending written notice in accordance with the terms of the Agreement to MATHIESON, indicating that he intended to continue the company, by himself or with others, and to purchase MATHIESON's interest under the terms of the Agreement, see Exhibit "B".

15. Section 7.7 of the Agreement specifically provides that after an expelled member is notified by the remaining member of his election to cause the company to purchase the expelled member's interest, "the *disassociating member will have no rights as a member of the company,* except to have the right of the disassociating member's interest purchased in

accordance with the terms of this Agreement."

16. DENIRO has retained the undersigned attorneys and has agreed to pay them a reasonable fee.

## COUNT I

## BREACH OF CONTRACT

17. The allegations of paragraphs 1 through 16 are realleged as if fully set forth herein.

18. The Agreement defined the rights and duties of the parties between themselves, and delineated MATHIESON's duties as a manager, employee, subcontractor and member of The Company.

19. MATHIESON has breached those duties by mismanagement of The Company business, by mismanagement of The Company assets, by use of The Company funds to pay personal expenses, by use of The Company funds to pay excessive salaries and commissions not due, by conversion of The Company funds for his personal use, and by competition with the company in violation of the terms of paragraph 10.4 of the Agreement.

20. As a direct and proximate result of the actions of MATHIESON in breaching the Agreement or portions of the Agreement, DENIRO, as the sole remaining Member, has been damaged and seeks compensatory damages.

WHEREFORE, Defendant/Counterclaimant, JOHN C. DENIRO, demands judgment for damages against MATHIESON in excess of $75,000.00, together with costs, attorney's fees and any and all other relief that the Court deems proper.

## COUNT II

## BREACH OF FIDUCIARY DUTY

21.     The allegations of paragraphs 1 through 16 are realleged as if fully set forth herein.

22.     The Agreement defines the rights and duties of the parties, and further delineates that MATHIESON had duties as a manager, employee, subcontractor and member of The Company, including the duty to act as a fiduciary to the company and other members, DENIRO.

23.     MATHIESON has breached those duties by mismanagement of The Company business, by mismanagement of The Company assets, by use of The Company funds to pay personal expenses, by use of The Company funds to pay excessive salaries and commissions not due by conversion of The Company funds for his personal use, and by competition with the company in violation of the terms of paragraph 10.4 of the Agreement.

24.     MATHIESON has breached his fiduciary duties and violated his duties of loyalty and due care, engaged in intentional misconduct, bad faith, conversion and misuse of company funds.

25.     MATHIESON has further engaged in conflicts of interest as precluded in The Agreement and is liable for money damages as a result.

26.     As a direct and proximate result of MATHIESON's breach of his contractual and fiduciary duties to act in good faith, DENIRO has been damaged.

WHEREFORE, Defendant/Counterclaimant, JOHN C. DENIRO, demands judgment for damages against MATHIESON in excess of $75,000.00, together with costs, attorney's fees and any and all other relief that the Court deems proper.

## COUNT III

## CONVERSION

27.     The allegations of paragraphs 1 through 16 are realleged herein as if fully set forth.

28.     Subsequent to October, 2002, MATHIESON converted The Company funds for his own personal use, including but not limited to the following particulars:

    a.     Use of The Company credit cards and credit checks and bank checks to pay personal expenses; and

    b.     Taking and failure to return commissions not earned.

WHEREFORE, the Defendant/Counterclaimant, JOHN C. DENIRO, requests that the Court enter a judgment in his favor and against the Plaintiff/ Respondent on Counterclaim, MATHIESON, in excess of $75,000.00, and for the costs of this action, including reasonable attorney's fees.

## COUNT IV

## INJUNCTION

29.     The allegations of paragraphs 1 through 16 are realleged herein as if fully set forth.

30.     At all times when he was a member of The Company, MATHIESON had a fiduciary duty to conduct the affairs of The Company according to the principles of good faith and utmost fidelity.

31.     MATHIESON also owed a fiduciary duty to the other members of The Company, to wit, DENIRO.

32. MATHIESON breached his fiduciary duties to The Company and DENIRO by engaging in self-dealing, paying personal expenses from The Company funds, paying excessive commissions to himself, competing with The Company in violation of paragraph 10.4 of the Agreement, diverting commissions due to The Company to himself, mismanagement of The Company, failure to pay The Company obligations, including but not limited to taxes, insurance and critical vendors.

33. DENIRO has no adequate remedy at law.

WHEREFORE, pursuant to paragraph 10.4 of the Operating Agreement, The Company seeks the following relief:

a. For a period of two years from September 18, 2007, a temporary and permanent injunction enjoining MATHIESON from directly or indirectly acting as an owner, broker, manager, or providing any supervising, managerial or recruiting services to any other persons, firms or corporations rendering real estate brokerage services within the "Restricted Territory" as defined by and in accordance with the terms of paragraph 10.4 of the Agreement.

b. For a period of two years from September 18, 2007, MATHIESON be temporarily and permanently enjoined from associating, hiring or employing any employee or independent contractor of The Company in accordance with the terms of paragraph 10.4 of the Agreement; and

c. That the Court enter a judgment in favor of DENIRO and against MATHIESON, for the costs of this action, including reasonable attorney's fees.

# CERTIFICATE OF SERVICE

      I hereby certify that on November 2, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      */s/ Robert S. Franklin*
      Robert S. Franklin, Esq.
      RF-0870
      ROBERT S. FRANKLIN, P.A.
      823 North Olive Avenue
      West Palm Beach, FL 33401
      (561) 805-7140
      (561) 805-7141 fax

## SERVICE LIST

CHRISTOPHER MATHIESON V. JOHN C. DENIRO
DOCKET NO. 1:07-cv-08527-LAK
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

James Cecchi, Esq.
Counsel for Plaintiff
Carella, Byrne, Bain, Gilfillan,
Cecchi, Stewart & Olstein, PC
5 Becker Farm Road
Roseland, New Jersey 07068-1739